973 A.2d 185

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**David Moore THOMAS.**

**Misc. Docket AG No. 6, Sept. Term, 2008.**

Court of Appeals of Maryland.

June 10, 2009.

124

Gail D. Kessler, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for Petitioner.

William H. Morstein, Ellicott City, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, Judge.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against David Moore Thomas ("Respondent" or "Thomas") charging him with numerous violations stemming largely from Respondent's handling of his trust account. Petitioner charged Respondent with violation of Maryland Lawyers' Rules of Professional Conduct ("MRPC") 1.15 [1] (Safekeeping Property) and 8.4(a-d) [2] (Mis-

---

1. The version of MRPC 1.15 applicable to the facts of this case provided:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust

account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

MRPC 1.15 was amended on 12 March 2007, effective 1 January 2008. The amendments did not change substantively the Rule or its purpose from that in effect at the time of Respondent's relevant conduct and at the time of service of the charges here. The current MRPC 1.15 provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607 b.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall

conduct), Md.Code (2004 Repl.Vol. & 2008 Supp.), Business Occupations & Professions Art. §§ 10–304,[3] 10–306,[4] and 10–307,[5] and Maryland Rules 16–604,[6] 16–607,[7] and 16–609.[8] The

distribute promptly all portions of the property as to which the interests are not in dispute.

2. MRPC 8.4(a-d) provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Misconduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

\* \* \*

3. Section 10–304, "Deposit of trust money," of the Business Occupations and Professions Article provides:

(a) General requirement. Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.

(b) Exceptions. Direction of court. Subsection (a) of this section does not apply if there is a court order to the contrary.

(c) Same. Real estate transaction. Notwithstanding subsection (a) of this section or any other law, a lawyer may disburse, at settlement in a real estate transaction, trust money that the lawyer receives in the transaction.

4. Section 10–306, "Misuse of trust money," of the Business Occupations and Professions Article provides:

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

5. Section 10–307, "Disciplinary action," of the Business Occupations and Professions Article provides:

A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide.

6. Maryland Rule 16–604, "Trust account-Required deposits," provides:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees

owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

7. Maryland Rule 16-607, "Commingling of funds," provides:

   a. General prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. of this Rule.

   b. Exceptions. 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16-610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

   2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

   3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

8. At the relevant time, the applicable Maryland Rule 16-609, "Prohibited transactions," provided:

   An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

By Order dated 12 March 2007, Maryland Rule 16-609 was amended, effective 1 January 2008, to provide:

   a. Generally. An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

   b. No cash disbursements. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or

charges against Respondent focus upon his attempts to withdraw funds from his attorney escrow account in excess of the funds available, his failure to separate properly funds received from clients between his escrow and general operating accounts, and his withdrawal of funds from his escrow account for client fees in excess of those earned.

We referred the matter to the Honorable Richard S. Bernhardt of the Circuit Court for Howard County to conduct an evidentiary hearing and render findings of fact and recommended conclusions of law regarding the charges. Judge Bernhardt held the evidentiary hearing on 9 September 2008. On 22 October 2008, he filed written Findings of Fact and Conclusions of Law.

## I. Findings of Fact

### A. Respondent's Background

Respondent graduated from The American University, Washington College of Law, and was admitted as a member of the Maryland Bar in 1975. He served as a law clerk in the Circuit Court for Anne Arundel County. After completing his judicial clerkship, Respondent worked as a District Court commissioner for one or two months, until he secured employment as an Assistant State's Attorney for Howard County, where he worked from 1977 until 1979. In 1979, Respondent joined a law firm as an associate. He remained with the firm until 14 July 1989, when he formed his own practice. Respondent has been a sole practitioner since leaving the firm.

### B. Establishment and Maintenance of Respondent's Attorney Trust Account

Thomas testified that he learned how to manage an attorney trust account during his time in private practice with the firm.

---

by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

c. Negative balance prohibited. No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

The firm kept a "large cushion" in its trust account in order to "write the check to the client" before the settlement check containing the client's funds had cleared and been deposited in the trust account.

With regards to Respondent's handling of his attorney trust account in his own practice, pursuant to the foregoing, Judge Bernhardt found:

Respondent opened an attorney trust account when he started his own practice. At all times relevant to the proceedings, the account was with M & T Bank. Respondent testified that when he opened his attorney trust account he did not take fees "in the early days" in order to build the cushion [described above]. Respondent did not testify how much money he deferred in fees in order to form his cushion and did not produce any evidence on the amount of the cushion. Respondent did not testify for how long a period he deferred fees in order to form the cushion and did not produce any evidence on the point. Respondent did not testify how often, if at all, he deferred taking a fee in order to form or maintain the cushion. Respondent did not testify as to the value of fees earned left in the trust account in order to form or maintain the cushion. Respondent did not produce evidence of the value of fees earned that he left in the trust account in order to form or maintain the cushion. Respondent presented no evidence to corroborate his testimony concerning the trust account practices at [the law firm] while he was employed at the firm. Respondent produced Respondent's Exhibit 4 ("Alert, New Rules Governing Attorney Trust Accounts") as support of his testimony and to suggest that the practice of having a cushion was a common practice. Respondent's Exhibit 4 was an advisement from Respondent's malpractice carrier to Respondent concerning the revised Maryland Rule 16–606. Respondent underlined that portion of Respondent's Exhibit 4 supporting his testimony. Respondent's Exhibit 4 advises that attorneys are responsible for more accounting and record keeping beyond merely keeping a positive balance. Respondent's Exhibit 4 does not explicitly, or by interpretation,

support the keeping of a cushion beyond the amount necessary to maintain the trust account, nor does the exhibit acknowledge that such a practice was commonplace in the profession.

Thomas retained the services of an accountant to reconcile his trust account from its creation in 1989 until 1993 or 1994. For reasons not made clear to Judge Bernhardt, Respondent terminated the services of the accountant before a reconciliation could be achieved. In 2003, Respondent retained the services of a second accountant to reconcile the account. The second accountant was unable to tell Respondent which funds, if any, contained in the account at the time belonged to Respondent. Thomas terminated the services of the second accountant in 2003 and took no further action to reconcile the account.

With regard to Thomas' keeping of financial records, Judge Bernhardt found:

> Respondent maintained individual files for each of his clients. Each client file contained a "ledger sheet" designed to record financial transactions (monies received and monies expended) for that file. Respondent adopted the style of ledger sheet that he used while at [the law firm in which he worked previously]. Respondent failed to make entries on the ledger to reflect client financial transactions. Respondent simply put whatever receipt or memorandum memorialized a financial transaction into the client file and then relied on a review of the file when he needed to make a financial determination related to the file. The individual client accounts were never reconciled.

Importantly, Judge Bernhardt concluded that "Respondent's failure to maintain records for his attorney trust account and failure to maintain records in the individual client accounts directly contributed to the inability to reconcile his attorney trust account."

### C. *Negative Balances in Attorney Trust Account*

On two separate occasions in January 2007, Respondent engaged in transactions resulting in negative balances in his

attorney trust account. On 17 January 2007, Respondent presented check number 2137, in the amount of $6,750.00, to M & T Bank for disbursement from his attorney trust account. At the time the check was presented, the account had an available balance of $1,148.25. The transaction resulted in a negative balance of $5,601.75. The dishonored check was returned on 18 January 2007.

On 22 January 2007, Respondent presented check number 2138, in the amount of $4,000.00, to M & T Bank for disbursement from his attorney trust account. At the time the check was presented, the available balance in the account was $1,148.25. The transaction resulted in a negative balance of $2,851.75. The dishonored check was returned on 23 January 2007.

### D. Clients Campbell, Shanaberg, Gajewski, and Smith

Concerning Respondent's handling of client funds for his clients Melvin Campbell, Zachary Shanaberg, Margaret Gajewski, and Cara Smith, Judge Bernhardt found:

1. Melvin Campbell

Respondent has represented an individual by the name of Melvin Campbell in connection with numerous criminal prosecutions. Respondent received $5,000.00 in fees from Mr. Campbell on January 4, 2001 all of which were deposited to Respondent's attorney trust account. Respondent has continued to represent Mr. Campbell in matters arising after January 4, 2001, including during the time period January 13, 2006 through March 30, 2007. There have been no further funds deposited into Respondent's general account or attorney trust account on behalf of Mr. Campbell since January 4, 2001.

Between January 13, 2006 and March 30, 2007 Respondent disbursed from his attorney trust account, as fee payment for services rendered to Melvin Campbell, the following amounts: June 20, 2006, check 2096 for $1,000.00; June 27, 2006, check 2097 for $3,000.00; July 6, 2006, check 2103 for $1,420.00; July 18, 2006, [c]heck 2107 for $2,142.37; July 31, 2006, check 2112 for $1,700.00; October 10, 2006,

check 2131 for $3,250.00; December 21, 2006, check 2140 for $3,000.00; January 10, 2007, check 2115 for $9,000.00; January 19, 2007, check 2138 for $4,000.00.

Respondent placed the following notations on the "memo line" of the above-noted checks: Check 2096 "Melvin Campbell, 10% Cash Bond for Talbot County District Court", check 2097–"Melvin Campbell Retainer", check 2103–"7.1 hrs. pt. Ret", check 2107 "10.5 hrs, film, mileage", check 2112 "Melvin Campbell", check 2131 "Melvin Campbell", check 2140 "Melvin Campbell", check 2115 "Campbell", check 2138 "Melvin Campbell".

In summary, between January 13, 2006 and March 30, 2007, Respondent paid himself from his attorney trust account, as fee payment for services rendered to Melvin Campbell, a total of $28,512.37. There were no deposits into Respondent's attorney trust account at all during the same time period.

The $9,000.00 (check 2115) payment that Respondent made to himself utilized funds that Respondent was obligated to hold in trust for clients Ruth and William Bratten. At the time of the payment to himself Respondent was required to have had $2,657.02 in his attorney trust account for the benefit of the Brattens. Upon presentment of check 2115 for $9,000.00 the balance of his attorney trust account became $1,148.23, below what he was required to be holding for the Brattens.

Respondent admitted that he removed money from his attorney trust account for personal reasons and placed Mr. Campbell's name on the memo line of the check.

2. Zachary Shanaberg

Respondent wrote check 2137 in the amount of $6,750.00 on January 17, 2007 referencing the payment to services provided to Zachary Shanaberg. There were never any funds deposited in Respondent's attorney trust account for the benefit of Zachary Shanaberg either before or after check 2137 was written. Check 2137 caused Respondent's

attorney trust account to have a negative balance when it was posted on January 18, 2007.

Respondent testified that Zachary Shanaberg was a client who had a large number of cases in Wicomico County. Respondent testified that Zachary Shanaberg's father paid him a fee and that Respondent deposited that payment directly into his general operating account. Respondent acknowledged in his testimony that he was aware that there were never any monies deposited into his attorney trust account for the benefit of Zachary Shanaberg.

3. [ ] Margaret Gajewski

Respondent represented Margaret Gajewski in matters concerning establishing a guardianship for her husband, Joseph Gajewski. The representation involved an area of law that Respondent was not familiar with and therefore he found it necessary to expend funds to receive the necessary training. Respondent benefit[t]ed from the training beyond the Gajewski case because Respondent's mother was facing similar issues as those presented in the Gajewski matter.

Respondent deposited $7,500.00 monies received from Ms. Gajewski into his attorney trust account on August 25, 2006. Respondent also deposited an additional $5,765.00 in monies received from Ms. Gajewski into his general operating account. As noted above, Respondent disbursed $3,000.00 to himself prior to August 25, 2006. Respondent disbursed an additional $3,000.00 to himself on August 28, 2006 by check 2122 which had "Margaret Gajewski-planning process" written on the "memo" line. Respondent then dis[burs]ed another $7,500.00 to himself on September 27, 2006 by check 2128 and, finally, $3,500.00 on December 18, 2006 by check 2135.

In summary, Respondent placed $7,500.00 into his trust account on behalf of Ms. Gajewski and dis[burs]ed $17,000.00 to himself from his trust account. Respondent paid himself $9,500.00 more from [his] attorney trust account than accounted for by monies from Ms. Gajewski. Respondent states that $3,000.00, or the same amount as in check 2122, represented the amount necessary to educate

himself and that he did not feel comfortable in billing Ms. Gajewski for that time. Respondent offered no attempt at an explanation for the remaining $6,500.00 that he paid himself from the trust account.

4. [ ] Cara Smith

Respondent represented Cara Smith. Respondent disbursed $1,000.00 to himself by trust account check 2132 written and posted November 2, 2006. There were never any funds deposited in Respondent's attorney trust account for the benefit of Cara Smith either before or after check 2132 was written. Respondent testified that he received a retainer of $500.00 and placed it directly into his general operating account. Mr. DeBone corroborated the deposit of the fee into the general operating account.

### E. Removing Fees Prior to Funds Being Posted to the Account

On no less than nine separate occasions, Respondent disbursed funds to himself from his attorney trust account, ostensibly as fees earned from clients, before the settlement funds for those clients' claims were received and deposited into the trust account.[9]

---

9. Specifically, Judge Bernhardt found:

1. [ ] Ronnie Flechier [sic]: Respondent represented Ronny Fleicher. Respondent disbursed $1,196.00 to himself as fees and costs by trust account check 2081 written January 13, 2006 and posted on January 17, 2006. The settlement monies from Nationwide Insurance were not deposited into the trust account until February 7, 2006.

2. [ ] Dr. Michael Parsons: Respondent represented Dr. Michael Parsons. Respondent disbursed $3,865.60 to himself as fees and costs by trust account check 2095 posted on May 23, 2006. The settlement monies from United National Specialties were not deposited into the trust account until June 7, 2006.

3. [ ] Ruth and William Bratten: Respondent represented Ruth and William Bratten. Respondent disbursed $6,415[.00] to himself as fees and costs (related to Ruth Bratten) by trust account check 2099 written June 27, 2006 and posted on June 27, 2006; and again for costs in the amount of $1,298.20 by trust account check 2102 written on June 28, 2006 and posted on June 29, 2006. The settlement

## F. Taking Excessive Fees

With regard to two particular clients, Respondent disbursed more funds to himself from his attorney trust account than were deposited in the account on behalf of the clients.[10]

___

monies from Travelers insurance were not deposited into the trust account until July 3, 2006.

4. [ ] De'Andre Harris: Respondent represented De'[ ] Andre Harris. Respondent disbursed $1,166.00 to himself as fees and costs by trust account check 2125 written September 19, 2006 and posted on September 19, 2006. The settlement monies from Selective Insurance were not deposited into the trust account until October 3, 2006.

5. [ ] Faye Harris: Respondent represented Faye Harris. Respondent disbursed $1,166.00 to himself as fees and costs by trust account check 2090 written September 15, 2006 and posted on September 15, 2006. The settlement monies from Selective Insurance were not deposited into the trust account until October 3, 2006.

6. [ ] Hatch/Dixon: Respondent dis[burs]ed check 2108 in the amount of $2,611.00 to himself on August 10, 2006. No funds had been placed into the account on behalf of the clients as of that date. On August 24, 2006 Respondent dis[burs]ed additional funds to himself in check 2118 in the amount of $1,542.00 as fees for client Hatch and check 2121 in the amount of $1,371.50 as fees for Dixon. Again, no funds had been placed into the account on behalf of the clients as of that date. The settlement monies from State Farm Insurance were not deposited into the account until August 28, 2006.

7. [ ] Margaret Gajewski: Respondent represented Margaret Gajewski. Respondent disbursed $3,000.00 to himself as fees and costs by trust account check 2114 posted on August 15, 2006. The retainer monies from Ms. Gajewski were not deposited into the trust account until August 28, 2006.

10. Specifically, Judge Bernhardt found:

Respondent dis[burs]ed check 2108 in the amount of $2,611.00 to himself on August 10, 2006. On August 24, 2006 Respondent dis[burs]ed additional funds to himself in check 2118 in the amount of $1,542.00 as fees for client Hatch and check 2121 in the amount of $1,371.50 as fees for client Dixon. Respondent dis[burs]ed additional monies in the Hatch/Dixon Matter as follows: [c]heck 2119 in the amount of $516.00 for medical expenses for Dixon; check 2120 in the amount of $158.00 for medical expenses for Hatch; check 2116 in the amount of $2,800.00 to Hatch as final proceeds; [c]heck 2117 in the amount of $2,112.50 to Dixon as final proceeds. The settlement monies in the amount of $4,500.00 for Hatch and $4,000.00 for Dixon were received from State Farm Insurance and deposited into the account on August 28, 2006.

Respondent deposited a total of $8,500.00 into his attorney trust account of behalf of Hatch/Dixon. Respondent dis[burs]ed a total of $11,111.00 from the account. Respondent dis[burs]ed $2,611.00, the

### G. Placement of Advance Fee Payments into General Operating Account

In his handling of client funds for his client, Jane Russell, Respondent did not maintain funds received from Ms. Russell in the proper account. Upon agreeing to represent Ms. Russell, Thomas received a retainer check of $1,000.00, but placed the entire retainer check promptly into his general operating account. He testified that he was billing at the rate of $200 per hour and that, in his opinion, at the time he deposited the retainer fee into his general operating account he had completed all but an insubstantial amount of the work (about thirty minutes worth). Although he was aware at the time of the deposit that he had not earned the entire amount, he believed that he would be completing the remaining work in the very near future. Ultimately, Ms. Russell, dissatisfied with Respondent's services, demanded the return of her retainer, and Respondent complied. Respondent did not produce time records or billing records to support his testimony about the work performed.

## II. Conclusions of Law

### A. Establishment and Maintenance of Attorney Trust Account

The hearing judge concluded that Respondent violated MRPC 1.15(a) and Maryland Rule 16–607. Thomas failed to maintain records of receipt and distribution of client funds as required; failed to account for which funds were client funds and which were funds earned; failed to maintain billing worksheets from which he could account properly for his time spent and time billed; and, intentionally failed to withdraw earned fees as required. The hearing judge concluded that Respondent violated the requirements of MRPC 1.15(a) to hold

---

precise amount reflected by his initial payment to himself, taking more from the account than had been placed into the account. Additionally, Respondent admitted to Attorney Grievance Commission Investigator John DeBone that he dis[burs]ed more money from the attorney trust account to himself in fees and costs than funds that were placed into the account on behalf of clients.

property of clients separate from the lawyer's own property by failing to withdraw fees as earned and to maintain complete records of account funds. Judge Bernhardt also concluded that, by failing to withdraw fees as earned, Respondent violated Maryland Rule 16–607(b)(2) because a lawyer is required to withdraw promptly funds belonging to the attorney when he or she becomes entitled to the funds.

## B. Negative Balances in Attorney Trust Account

Based on the disbursements Respondent made from his attorney trust account on 17 January 2007 and 22 January 2007, resulting in a negative balance in his attorney trust account, the hearing judge concluded that Respondent violated Maryland Rule 16–609(c).[11]

## C. Handling of Funds for Clients Campbell, Shanaberg, Gajewski, and Smith

Based on his findings that Thomas disbursed funds from his attorney trust account to himself for work that he claimed he completed for clients who never contributed funds to the attorney trust account, and that in making those disbursements Respondent utilized funds he was holding in trust for clients other than those he attributed to those disbursements, the hearing judge concluded that Respondent violated MRPC 1.15(c) and Maryland Rule 16–609(a).[12]

Regarding Petitioner's charges that Respondent's mishandling of client funds constituted violations of Md.Code, Business Occupations and Professions Art., §§ 10–306 and 10–307, and, thereby, also MRPC 8.4(b) and (c), Judge Bernhardt explained that violations of §§ 10–306 and 10–307 must be willful, citing *Attorney Grievance Commission v. Adams*, 349 Md. 86, 706 A.2d 1080 (1998), and that, in the context of

---

11. Maryland Rule 16–609, subsection (c), was not in effect, as such, at the time of Respondent's 17 and 22 January 2007 transactions. At the time of Respondent's actions, the applicable version of Maryland Rule 16–609 was not divided into subsections. *See infra*.

12. *See supra* n. 11.

attorney grievance matters, "willful" has been defined as "the 'voluntary, intentional violation of a known legal duty not requiring a deceitful or fraudulent motive.'" *Att'y Grievance Comm'n v. Nussbaum,* 401 Md. 612, 636, 934 A.2d 1, 15 (2007) (quoting *Att'y Grievance Comm'n v. Tayback,* 378 Md. 578, 589, 837 A.2d 158, 165 (2003)).

The hearing judge summarized Respondent's defense to Petitioner's allegations as follows:

Respondent's position is that any misuse of attorney trust funds was unintentional and not willful because he believed that he was removing money that was his money he had earned in the "early days" and that he had left [the prior funds] in the account to create a cushion. Respondent testified that he had not taken fees from his attorney trust account during "the early days." He testified that he learned at [the law firm in which he worked previously] that he should keep a cushion in order to be able to write the client a check immediately instead of waiting for the settlement check to clear. He testified that when he took money from his attorney trust account, listing the names of Melvin Campbell, Zachary Shanaberg[,] Margaret Gajewski (beyond $7,500.00) and Cara Smith, he knew that there [were] no corresponding deposits in the trust account. Respondent rationalized his conduct by testifying that while he needed the money that he paid himself for personal reasons, he believed that he had performed services of the value of the payments for the named clients, without compensation. Respondent testified that he was not intentionally using the deposits he was holding in trust for clients when he paid himself using the above names because he believed that he had his own money commingled with the clients' deposits and that he was merely taking his own money. Respondent also argues that by virtue of his testimony concerning the creation of a cushion, the burden rests with the [Petitioner] to demonstrate that the payments noted above came from clients' deposits and not money that Respondent allowed to collect in the account at some point during his legal career.

Judge Bernhardt resolved that Thomas' defense lacked merit. First, he observed that Respondent's conduct "resulted in a balance of $1,148.25 [in his attorney trust account] when there should have been, at a bare minimum, $2,657.02 being held on behalf of Ruth and William Bratten." Second, the hearing judge noted that, under Business Occupations and Professions Art., §§ 10–301, 10–306, and 10–307, Respondent's required attorney trust account contained "trust money," defined as "money [that] a person entrusts to a lawyer to hold for the benefit of a client or a beneficial owner." Md.Code, Bus. Occ. & Prof. § 10–301. Respondent conceded in his Answer to the Petition that certain withdrawals from his attorney trust account were "attributable to a client even though such was not [the] client from whom the funds had resulted." As Judge Bernhardt iterated:

Respondent testified in general terms that he consciously created a cushion by not paying himself earned fees during "the early days" of his practice. Respondent did not testify when he started the practice of not paying himself. Respondent did not testify how much in fees he chose not to take and therefore never defined the size of the cushion. Respondent did not testify when he stopped, or if he stopped, leaving earned fees in the trust account. Respondent, even in the most general of terms, did not testify how large the cushion was at any point in time following the opening of [his] attorney trust account. Respondent did not present any evidence, documentary or testimonial, to corroborate his testimony in any respect.

The evidence does establish that Respondent employed an accountant from the opening of his account until 1993 or 1994 for the purpose of reconciling his account[,] thereby establishing that he should have known the status of the account during that time period. Respondent chose to end the practice of reconciling his account. The evidence establishes that Respondent was concerned enough about the condition of his trust account that he hired a second accountant to attempt to reconcile the account in 2003. As a result of the second accountant's work[,] Respondent was aware that he had no idea what, if any, amount of money in

the attorney trust belonged to him. Instead of taking some remedial action to determine the status of the money in the account and to protect the deposits being held in trust for his clients (such as closing the account as he did following Bar Counsel's involvement) Respondent fired the accountant. Respondent then proceeded to withdraw for his own personal use at least $45,762.37 from his attorney trust account (Campbell, Gajewski, Smith and Shanaberg) during the time period from January 13, 2006 to March 31, 2007 despite the lack of any reasonable basis to believe that he had money of his own in the account much less the significant amount noted above. . . .

Upon these findings, Judge Bernhardt concluded that Petitioner proved by clear and convincing evidence that Respondent violated Business Occupations and Professions Art., §§ 10–306 and 10–307, and MRPC 8.4(b) and (c).

### D. Removing Fees Prior to Fees Posting to His Attorney Trust Account

Based on his finding that Thomas removed funds from his attorney trust account for work conducted for the named clients before the funds that would permit disbursement of earned fees were deposited into the account, the hearing judge concluded that Respondent violated MRPC 1.15(a) and Business Occupations and Professions Art., § 10–306.

### E. Taking Excessive Fees

Judge Bernhardt found that, with regard to clients Hatch and Dixon, Respondent disbursed more funds to himself as earned fees from his attorney trust account than were placed into the account on behalf of those clients. Based on this finding, the hearing judge concluded that Respondent violated Business Occupations and Professions Art., § 10–306 and MRPC 1.15(c).

### F. Placement of Advance Fees into General Operating Account

Judge Bernhardt found that during the course of representing his client Russell, Respondent received a retainer fee of

$1,000.00. He deposited the retainer fee in his general operating account. At the time of the deposit, Respondent claimed that he thought he had completed most of the work to earn the fee, but when Ms. Russell ultimately demanded the return of the entire retainer, Respondent complied. Thomas did not produce time records or billing records, however, to support his testimony. The hearing judge concluded from the evidence that Respondent placed advance fee payments into his general operating account before the fees had been fully earned, a violation of Business Occupations and Professions Art., §§ 10–304 and 10–306, and MRPC 1.15(a).

### III. Mitigation

#### A. Found Not Proven by a Preponderance of Evidence

The first unsuccessful mitigating circumstance or affirmative defense Thomas aspired to establish was his lack of understanding of the requirements of the Maryland Rules governing attorney trust accounts. Although Respondent acknowledged reading the pertinent Maryland Rules regarding such accounts, he professed very little actual knowledge of the obligations found there. He testified that his belief was that all he had to do was to maintain a positive balance. He also testified that he was using his attorney trust account as a personal savings account, but claimed not to know any better. He claimed that any violations of the Maryland Rules, therefore, were unintentional.

Judge Bernhardt found incredible Thomas' testimony on this score. The hearing judge determined that the only justification Respondent offered for his conduct was his testimony that the law firm he worked for kept a substantial cushion in its escrow account for the purpose of paying clients before the settlement checks cleared. Nonetheless, on two separate occasions, Respondent hired accountants to try to reconcile his attorney trust account. The hearing judge found that by availing himself of the accountants' services, Respondent manifested sufficient understanding on his part of his professional responsibilities, in particular that his attorney

trust account needed to be reconciled. Further, Judge Bernhardt gave as a reason for disbelieving Respondent's assertion of lack of intent the fact that when advised by the second accountant that his account was beyond reconciliation, Respondent fired the accountant instead of closing the account. He did not close the account until three years later and then only when Bar Counsel became aware of his misconduct. Thus, the hearing judge found that Thomas failed to prove by a preponderance of the evidence [13] that his lack of understanding of what was expected was a defense to these particular charges brought by Petitioner.

A second unsuccessful mitigating circumstance or affirmative defense tendered by Respondent involved alleged mental health problems. Thomas testified that he fought a lengthy battle to control his weight. In 1999, he began seeing Dr. Michael Parsons. Dr. Parsons allegedly prescribed Phentermine for Respondent, a medication that acted like the street drug called "speed" and suppressed Respondent's appetite. Dr. Parsons ultimately ordered Respondent to discontinue its use in 2006 due to his age. Respondent testified that he had less energy after discontinuing the medication. Dr. Parsons did not testify.

Thomas also testified that, after being contacted initially in 2007 by Bar Counsel regarding these disciplinary matters, he returned to a psychiatrist, Dr. Charles Wasserman, who he had consulted earlier. Respondent had seen Dr. Wasserman initially in 1998, but was not prescribed medication at the time. Respondent returned to Dr. Wasserman after hearing from Bar Counsel because he was feeling overwhelmed. Thomas testified that he had been feeling "strain" before then, and that Bar Counsel's intervention was the "straw that broke the camel's back." Dr. Wasserman prescribed Welbutrin, Traza-

---

13. Maryland Rule 16–757(b) provides:

    (b) Burdens of proof. The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

done, and Perphenatizine, medications associated with a diagnosis of depression. Respondent testified that the medication gave him energy and elevated his mood. Dr. Wasserman did not testify.

Judge Bernhardt found that Thomas failed to show by a preponderance of the evidence that any mental health problems were shown to be a legitimate defense to Petitioner's charges:

> As stated earlier, Maryland Rule 16–757(b) places the burden of proving a mitigating condition upon Respondent. The existence of certain mental conditions may constitute "compelling extenuating circumstances" and such a factual finding by the hearing court will normally be accepted unless the case involves allegations of intentional dishonesty, misappropriation, fraud, stealing, serious criminal conduct and other such serious misconduct. In cases involving serious misconduct, the mental condition must be "utterly debilitating mental or physical health conditions, ... that is the 'root cause' of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC." *Attorney Grievance v. Vanderlinde,* 364 Md. 376, at 413–414, 773 A.2d 463 (2001).

Respondent did not present the testimony of Dr. Parson or Dr. Wasserman. Respondent did not present expert testimony as to the properties of medications that he may have taken over the years. Respondent did not present expert testimony as to any condition from which he may have suffered or its effect on Respondent's ability to manage his attorney trust account.

The evidence demonstrates that during the time period from [ ] 1999 when Respondent was prescribed the weight control medicine to the time when he saw Dr. Wasserman in 2007 that Respondent was capable of managing his personal and professional affairs. For example, during the time periods that Respondent was not taking phent[er]mine he did not miss court appearances and he paid mortgages on two proper-

ties that he owned and taxes on four properties that he owned. Respondent was not subject to debt collection actions in his private life or competency complaints in his professional life. Additionally, Respondent maintained an active social life, and held positions in the scouting movement, Commodore of the Fells Point Yacht Club, Fells Point Historical Society and President of the Elkridge Kiwanis Club along with other social organization memberships. Respondent has not proven by a preponderance of the evidence that his use, or discontinuance, of phent[er]mine was a "cause", much less a "root cause", of Respondent's misconduct. Similarly, even accepting Respondent's testimony as evidence that Dr. Wasserman had diagnosed him as being depressed, Respondent still has not proven by a preponderance of the evidence that he suffers from a mental health problem or that if he does that it was a "cause", or "root cause", of Respondent's misconduct.

The final failed mitigating circumstance or affirmative defense mounted by Respondent concerned his struggles in finding a replacement for his long-time administrative assistant. Thomas testified that his administrative assistant retired in October 2005 after working for him for more than sixteen years. He struggled to find a suitable replacement and had "gone through" six or seven assistants without finding a satisfactory replacement, a situation he described as "discouraging" and "demoralizing." Respondent conceded, however, that his long-time assistant had not been responsible for his trust account and ledgers.

Judge Bernhardt concluded that Respondent failed to prove, by a preponderance of the evidence, that the issues related to his administrative assistant's departure were a legitimate defense to Petitioner's charges. The hearing judge concluded that the problems Respondent faced related to his attorney trust account and client records predated his former assistant's departure and did not implicate her in the operation and maintenance of his attorney trust account.

### B. Proven by a Preponderance of Evidence

The hearing judge was satisfied, by a preponderance of the evidence, that Respondent established that: (a) no client

suffered a monetary loss; (b) Thomas undertook remedial action to bring his attorney trust account into compliance, in that ultimately he closed his former account and opened a new account, attended courses on trust account maintenance, employed the use of forms and materials to maintain his account, limited the funds in the current account to those permitted by the Rules, and reconciled the new account on a monthly basis; (c) Respondent has not been the subject of a prior disciplinary action; and (d) the amount of unearned retainer in the Russell matter, which Thomas placed into his general operating account, was relatively small and placed in the general operating account due to Respondent's belief that he would soon complete the additional work needed to earn the final portion of the retainer.

### *IV. Our Standard of Review*

" 'This Court has original and complete jurisdiction over attorney discipline proceedings' in Maryland." *Att'y Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 235 (2008) (quoting *Att'y Grievance Comm'n v. Adams*, 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998)). Although we conduct an independent review of the record, we accept the hearing judge's findings of fact unless those findings are found to be clearly erroneous. *Ugwuonye*, 405 Md. at 368, 952 A.2d at 235–36 (citing *Att'y Grievance Comm'n v. Zdravkovich*, 375 Md. 110, 126, 825 A.2d 418, 427 (2003)). The Court gives deference to the hearing judge's assessment of the credibility of the witnesses. *Ugwuonye*, 405 Md. at 368, 952 A.2d at 236 (citing *Zdravkovich*, 375 Md. at 126, 825 A.2d at 427). Factual findings by the hearing judge will not be disturbed if they are founded on clear and convincing evidence. *Ugwuonye*, 405 Md. at 368, 952 A.2d at 236 (citing *Att'y Grievance Comm'n v. Monfried*, 368 Md. 373, 388, 794 A.2d 92, 100 (2002)). All proposed conclusions of law by the hearing judge, however, are subject to *de novo* review by this Court. *Ugwuonye*, 405 Md. at 368, 952 A.2d at 236 (citing *Att'y Grievance Comm'n v. O'Toole*, 379 Md. 595, 604, 843 A.2d 50, 55 (2004)).

## V.  Exceptions

Petitioner took no exceptions to the hearing judge's findings or conclusions.  Respondent noted two exceptions to Judge Bernhardt's factual findings and several to his conclusions of law.  It appears Thomas excepts to the hearing judge's characterization of Respondent's own testimony about the length of time, while he was a sole practitioner, he left earned fees in the trust account, thereby commingling his funds with his client funds.  Respondent complains that the hearing judge may have inferred wrongly that this activity was limited to "the early days" of his practice.  Respondent seems to contend rather that he perpetrated this misconduct over a much longer time during his sole practice.  Respondent seems to argue that the long continuation of his practice of commingling funds, in clear violation of the pertinent Maryland Rules, explains why the accountant Respondent employed in 2003 found that some $80,000.00 was "unreconcilable" and could not be associated with any client who had funds in the account. Building on that foundation, Respondent then suggests boldly that because it could not be shown that the amounts he withdrew from his attorney trust account were attributable to specific clients, "it would appear that any funds removed by [Respondent] for his use always resulted from funds that were not the property of any client."

Thomas also notes as exceptions what he believes were omissions from the findings of fact, including acknowledgment of his testimony that he never wrote a check from the attorney trust account believing he was not entitled to the funds withdrawn, that he acknowledged that he "made a big mistake" in maintaining substantial funds in the account, and that he cooperated with Bar Counsel.

Thomas excepts to several of the legal conclusions made by the hearing judge.  He points out that Maryland Rule 16–609(c), strictly speaking, is inapplicable to the present case because the effective date of that particular subsection is 1 January 2008, which post-dates the conduct which formed the basis for Petitioner's relevant charges.  Thomas' flagship ob-

jection to the hearing judge's legal conclusions that he violated MRPC 8.4(b) and (c) and Business Occupations and Professions Art. §§ 10–306 and 10–307 is that any violations of those sections or rules were not willful. Respondent's position is that, with the one exception when he withdrew amounts in excess of those required to be in his attorney trust account, he "never invaded client[ ] funds" and made withdrawals under the belief that the funds being withdrawn were previously earned fees that he left in the account. With specific reference to his attempts on 17 and 22 January 2007 to withdraw $6,750.00 from his attorney trust account, even though the available balance in the account at the time was $1,148.25, Respondent argues that "the only logical conclusion is that he believed there were significant funds in the account." He posits that these two transactions were negligent, at worst, because "[o]ne simply does not knowingly write a check to himself which he knows will be dishonored due to grossly insufficient funds." Thus, Respondent's general position is that his continuous belief that the funds being withdrawn were earned fees is sufficient to negate these violations.

## VI. Discussion of Exceptions

### A. Establishment and Maintenance of Attorney Trust Account

The hearing judge found violations of MRPC 1.15(a) and Maryland Rule 16–607(b)(2) because Respondent failed to remove his earned fees promptly from the trust account, thereby commingling his clients' funds with his own, and because Respondent failed to maintain proper records of to which clients the funds added to or withdrawn from his attorney trust account belonged. MRPC 1.15(a) states:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be

identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

Maryland Rule 16–607(b)(2) states:

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

Thomas testified that his practice was to leave earned fees in the account in order to "build a cushion." Respondent was unable to specify the amounts of earned fees he left in the account, how often he left the fees in the account, or for how long of a period this practice occurred. On two separate occasions, in 1993 or 1994 and again in 2003, Respondent retained the services of accountants to reconcile his trust account, but to no avail. Because of Respondent's lack of adequate record-keeping, neither Respondent nor the accountants he employed briefly were able to decipher which funds in the account belonged to whom. In failing to remove his earned fees promptly from his attorney trust account, Respondent fostered this situation and violated both MRPC 1.15(a), requiring a client's property to be kept separate from the lawyer's property, and Maryland Rule 16–607(b)(2), requiring an attorney to withdraw promptly earned fees from her or his attorney trust account. *See Att'y Grievance Comm'n v. Zuckerman,* 386 Md. 341, 371, 872 A.2d 693, 710–11 (2005).

### B. Negative Balances in Attorney Trust Account

■ Judge Bernhardt concluded that Respondent's attempts on 17 and 22 January 2007 to withdraw $6,750.00 and $4,000.00, respectively, from his attorney trust account, when the account balance was $1,148.25, violated Maryland Rule 16–

609(c)'s prohibition against withdrawing funds from an attorney trust account where the withdrawal "would create a negative balance with regard to an individual client matter or all client matters in the aggregate." Md. Rule 16–609(c). At the time of Respondent's conduct, however, Maryland Rule 16–609(c) was not in effect. By an Order dated 12 March 2007, subsection (c) was added to Maryland Rule 16–609, to take effect on 1 January 2008. As applicable to Respondent's conduct, the former version of Maryland Rule 16–609 provided:

> An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.[14]

Although the hearing judge mistakenly found that Respondent's conduct violated the current Maryland Rule 16–609(c), there is sufficient evidence in the record that Respondent's conduct violated the applicable version of Maryland Rule 16–609, as charged by Petitioner. With regard to Respondent's handling of funds for client Melvin Campbell, the hearing judge found, in pertinent part:

> In summary, between January 13, 2006 and March 30, 2007, Respondent paid himself from his attorney trust account, as fee payment for services rendered to Melvin Campbell, a total of $28,512.37. There were no deposits into Respondent's attorney trust account at all during the same time period.

> The $9,000.00 (check 2115) payment that Respondent made to himself utilized funds that Respondent was obligated to hold in trust for clients Ruth and William Bratten. At the time of the payment to himself Respondent was required to have had $2,657.02 in his attorney trust account

---

14. Petitioner charged Respondent under the applicable, former version of Maryland Rule 16-609 in the Petition for Disciplinary or Remedial Action.

for the benefit of the Brattens. Upon presentment of check 2115 for $9,000.00 the balance of his attorney trust account became $1,148.23, below what he was required to be holding for the Brattens.

Respondent admitted that he removed money from his attorney trust account for personal reasons and placed Mr. Campbell's name on the memo line of the check.

Thus, Respondent engaged in conduct in violation of Maryland Rule 16–609 by withdrawing funds from his attorney trust account for an unauthorized purpose. *See Att'y Grievance Comm'n v. Obi,* 393 Md. 643, 653, 655–56, 904 A.2d 422, 427–28, 429 (2006).

### C. Handling of Funds for Clients Campbell, Shanaberg, Gajewski, and Smith

The hearing judge found that, in handling client funds for these clients, Thomas distributed funds to himself from his attorney trust account for work he claimed to have completed for them. In each instance, Thomas either withdrew funds from his trust account in excess of funds deposited on behalf of that client, or withdrew funds from his attorney trust account for clients who did not contribute to the trust account. As noted previously, Judge Bernhardt found, in pertinent part:

\* \* \*

In summary, between January 13, 2006 and March 30, 2007, Respondent paid himself from his attorney trust account, as fee payment for services rendered to Melvin Campbell, a total of $28,512.37. There were no deposits into Respondent's attorney trust account at all during the same time period.

. . . .

Respondent admitted that he removed money from his attorney trust account for personal reasons and placed Mr. Campbell's name on the memo line of the check.

. . . .

Respondent wrote check 2137 in the amount of $6,750.00 on January 17, 2007 referencing the payment to services

provided to Zachary Shanaberg. There were never any funds deposited in Respondent's attorney trust account for the benefit of Zachary Shanaberg either before or after check 2137 was written. Check 2137 caused Respondent's attorney trust account to have a negative balance when it was posted on January 18, 2007.

. . . .

In summary, Respondent placed $7,500.00 into his trust account on behalf of Ms. Gajewski and dis[burs]ed $17,000.00 to himself from his trust account. Respondent paid himself $9,500.00 more from [his] attorney trust account than accounted for by monies from Ms. Gajewski. Respondent states that $3,000.00, or the same amount as in check 2122, represented the amount necessary to educate himself and that he did not feel comfortable in billing Ms. Gajewski for that time. Respondent offered no attempt at an explanation for the remaining $6,500.00 that he paid himself from the trust account.

. . . .

Respondent represented Cara Smith. Respondent disbursed $1,000.00 to himself by trust account check 2132 written and posted November 2, 2006. There were never any funds deposited in Respondent's attorney trust account for the benefit of Cara Smith either before or after check 2132 was written. Respondent testified that he received a retainer of $500.00 and placed it directly into his general operating account. Mr. DeBone corroborated the deposit of the fee into the general operating account.

Pursuant to these factual findings, Judge Bernhardt concluded correctly that Thomas violated MRPC 1.15(c), which permits an attorney to withdraw fees from a trust account "only as fees are earned or expenses incurred," because Thomas withdrew funds from his attorney trust account as fees earned for clients in excess of the amounts those clients contributed to the trust account.[15]

---

**15.** The hearing judge also concluded that Respondent's conduct was a violation of Maryland Rule 16–609. We agree. *See supra* Part VI.B.

**154**

Petitioner also charged that the misconduct described above is a violation of Business Occupations and Professions Art. §§ 10–306 and 10–307, and thereby MRPC 8.4(b) and (c) as well. As noted earlier, Business Occupations and Professions Art. § 10–306 provides:

> A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

Business Occupations and Professions Art. 10–307 provides:

> A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide.

As we reiterated in *Attorney Grievance Commission v. Adams,* 349 Md. 86, 706 A.2d 1080 (1998),

> We have said that in order to invoke disciplinary proceedings for a violation of section 10–306, section "10–307 requires that the attorney's violation of [section] 10–306 must be *willful.*" *Glenn,* 341 Md. at 482, 671 A.2d at 479 (footnote omitted). We went on in *Glenn* to note that while willfulness "does not require some proof of a specific criminal intent, it does require at least proof of a general intent." *Id.* at 482, 671 A.2d at 480.

*Adams,* 349 Md. at 97–98, 706 A.2d at 1085 (footnote omitted) (emphasis in original). We agree with the hearing judge's recommended conclusion of law that Respondent's conduct violated Business Occupations and Professions Art. § 10–306. Further, applying the *Adams* standard of willfulness, we agree with the hearing judge's conclusion that Thomas violated Business Occupations and Professions Art. § 10–307.

In *Attorney Grievance Commission v. Awuah,* 346 Md. 420, 697 A.2d 446 (1997), a case similar to the present one, Awuah failed to maintain a separate trust account for the handling of client funds and maintained in the same account client funds, earned attorney's fees, and personal and operating expense funds. We reviewed there Bar Counsel's charge that the

attorney violated Business Occupations and Professions § 10–306 as follows:

Bar Counsel's submission that the respondent violated Rule 8.4 and § 10–306 of the Business Occupations and Professions Article was premised on the respondent having kept for his personal use the $1000.00 he withheld from the Tachie and Ahilable settlement proceeds. Judge Mason found a lack of clear and convincing evidence that the respondent violated the statute. With respect to the charged rule violation, he stated:

> The Court is not persuaded by clear and convincing evidence that the Defendant engaged in conduct involving dishonesty, fraud, deceit and misrepresentation. While the Respondent admittedly and clearly used funds from a trust account for operating expenses, it appears in this instance that such conduct was motivated by ignorance of his obligations and not by fraud, dishonesty or deceit. With respect to the Respondent's failures to pay Mr. Wheatley monies Mr. Wheatley claimed to be owned, the Court finds any failures to notify Mr. Wheatley were occasioned by the Respondent's ignorance of his obligation and not an attempt to defraud Mr. Wheatley of monies that he claimed. The Court has previously concluded that there is insufficient evidence to establish by clear and convincing evidence that the Respondent used for his own benefit the two $1000.00 payments that had been withheld from the settlement funds for Ahilable and Tachie even after MHCE refused to accept them.

As indicated, Bar Counsel's only exception was to the failure of the court to find that the respondent misappropriated the two $1000.00 payments. To support his exception, he relies on the failure of the respondent's trust account records to substantiate the respondent's assertion that, having been told by MHCE that the amount withheld was unacceptable as payment in full, those payments were returned to the clients. Bar Counsel decries the court's acceptance of the respondent's "bald claim that he returned the money to his clients when the records of the Respon-

dent's trust account show that no such payments were ever made."

Bar Counsel's exception is overruled. It questions a factual finding by the judge who not only heard, but also was able to observe the demeanor of the respondent, whose testimony he credited. Judge Mason articulated the basis for his conclusion that Bar Counsel did not establish by clear and convincing evidence that respondent failed to return the money to the clients. He considered the character testimony presented by the respondent, the absence of other evidence to indicate that respondent on any other occasion took client monies for his own use, and the overwhelming conceded evidence with respect to respondent's total ineptness concerning the handling of the business aspects of his practice. It is well settled that, in disciplinary proceedings, the factual findings of the hearing judge will not be disturbed unless they are clearly erroneous. *Attorney Griev. Comm'n v. Kemp,* 303 Md. 664, 674, 496 A.2d 672, 677 (1985). *See also,* Maryland Rule 8–131. There is simply no basis for overturning Judge Mason's factual finding that the respondent did not misappropriate any of his clients' money.

*Awuah,* 346 Md. at 432–34, 697 A.2d at 453 (footnote omitted).

In the present case, as in *Awuah,* the factual determination of whether Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation was within the province of the hearing judge, to be decided after consideration of character testimony and other evidence presented touching upon any proffered explanation for Respondent's conduct. We repeat here, in pertinent part, the relevant factual conclusions of Judge Bernhardt:

\* \* \*

In summary, between January 13, 2006 and March 30, 2007, Respondent paid himself from his attorney trust account, as fee payment for services rendered to Melvin Campbell, a total of $28,512.37. There were no deposits

into Respondent's attorney trust account at all during the same time period.

. . . .

*Respondent admitted that he removed money from his attorney trust account for personal reasons and placed Mr. Campbell's name on the memo line of the check.*

. . . .

Respondent wrote check 2137 in the amount of $6,750.00 on January 17, 2007 referencing the payment of services provided to Zachary Shanaberg.

*. . . Respondent acknowledged in his testimony that he was aware that there were never any monies deposited into his attorney trust account for the benefit of Zachary Shanaberg.*

. . . .

In summary, Respondent placed $7,500.00 into his trust account on behalf of Ms. Gajewski and dis[burs]ed $17,000.00 to himself from his trust account. Respondent paid himself $9,500.00 more from [his] attorney trust account than accounted for by monies from Ms. Gajewski. Respondent states that $3,000.00, or the same amount as in check 2122, represented the amount necessary to educate himself and that he did not feel comfortable in billing Ms. Gajewski for that time. *Respondent offered no attempt at an explanation for the remaining $6,500.00 that he paid himself from the trust account.*

. . . .

Respondent's position is that any misuse of attorney trust funds was unintentional and not willful because he believed that he was removing money that was his money he had earned in the "early days" and that he had left [the prior funds] in the account to create a cushion. Respondent testified that he had not taken fees from his attorney trust account during "the early days." He testified that he learned at [the law firm at which he previously worked] that he should keep a cushion in order to be able to write the client a check immediately instead of waiting for the settle-

ment check to clear. *He testified that when he took money from his attorney trust account, listing the names of Melvin Campbell, Zachary Shanaberg[,] Margaret Gajewski (beyond $7,500.00) and Cara Smith, he knew that there [were] no corresponding deposits in the trust account. Respondent rationalized his conduct by testifying that while he needed the money that he paid himself for personal reasons, he believed that he had performed services of the value of the payments for the named clients, without compensation.* Respondent testified that he was not intentionally using the deposits he was holding in trust for clients when he paid himself using the above names because he believed that he had his own money commingled with the clients' deposits and that he was merely taking his own money. Respondent also argues that by virtue of his testimony concerning the creation of a cushion, the burden rests with the [Petitioner] to demonstrate that the payments noted above came from clients' deposits and not money that Respondent allowed to collect in the account at some point during his legal career.

. . . .

Respondent testified in general terms that he consciously created a cushion by not paying himself earned fees during "the early days" of his practice. Respondent did not testify when he started the practice of not paying himself. Respondent did not testify how much in fees he chose not to take and therefore never defined the size of the cushion. Respondent did not testify when he stopped, or if he stopped, leaving earned fees in the trust account. Respondent, even in the most general of terms, did not testify how large the cushion was at any point in time following the opening of [his] attorney trust account. *Respondent did not present any evidence, documentary or testimonial, to corroborate his testimony in any respect.*

The evidence does establish that Respondent employed an accountant from the opening of his account until 1993 or 1994 for the purpose of reconciling his account[,] thereby establishing that he should have known the status of the

account during that time period. Respondent chose to end the practice of reconciling his account. The evidence establishes that Respondent was concerned enough about the condition of his trust account that he hired a second accountant to attempt to reconcile the account in 2003. As a result of the second accountant's work[,] Respondent was aware that he had no idea what, if any, amount of money in the attorney trust belonged to him. Instead of taking some remedial action to determine the status of the money in the account and to protect the deposits being held in trust for his clients (such as closing the account as he did following Bar Counsel's involvement) Respondent fired the accountant. *Respondent then proceeded to withdraw for his own personal use at least $45,762.37 from his attorney trust account (Campbell, Gajewski, Smith and Shanaberg) during the time period from January 13, 2006 to March 31, 2007 despite the lack of any reasonable basis to believe that he had money of his own in the account much less the significant amount noted above . . . .*

(emphasis added). Thus, what distinguishes Thomas' conduct as more serious than that of Awuah, conduct which rises to the level of dishonesty, was, as the hearing judge found, Respondent's intentional misrepresentations that much of the funds he withdrew from his account were for fees earned from clients who contributed significantly less, or not at all, to the trust account in the amounts Respondent withdrew. For this reason, we overrule Thomas' flagship exception to the hearing judge's conclusions of law—that Respondent subjectively believed he was entitled to the funds he withdrew from his attorney trust account because the funds he withdrew were previously earned fees he had left in the account to "build a cushion." Regardless of Respondent's subjective belief,[16] his

---

**16.** Maryland Rule 16-757(b) provides that the "petitioner has the burden of proving the averments of the petition by clear and convincing evidence." At the heart of Thomas' central exception here is that "by virtue of his testimony concerning the creation of a cushion, the burden rests with the Commission to demonstrate that the ⌊withdrawals made from his trust account⌋ came from clients' deposits and not money that

attribution of the withdrawn funds to later clients who deposited significantly less than the amounts withdrawn pushes Respondent's conduct across the willfulness threshold for purposes of Business Occupations and Professions Art. § 10–307. Therefore, based on Respondent's conduct, in particular his handling of funds regarding Campbell and the Brattens, *see* n. 16, we agree with the hearing judge's conclusion that Respondent's conduct violated §§ 10–306 and 10–307.

This conclusion led the hearing judge also to conclude that Thomas' conduct violated MRPC 8.4(b) and (c). MRPC 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other re-

---

Respondent allowed to collect in the account at some point during his legal career." Thus, it seems that Respondent's exception to the finding of his violation of § 10–306, which states that "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer," is that Petitioner has not proven by clear and convincing evidence that Respondent used "trust money" in violation of § 10–306. "Trust money" is defined in Business Occupations and Professions Art. § 10–301 as "a deposit, payment, or other money that a person entrusts to a lawyer to hold for the benefit of a client or a beneficial owner." Any merit in Respondent's position is dependent on the fact that neither Respondent nor Petitioner was able to reconcile the source of, or claimant(s) to, most of the funds in Respondent's trust account as of the initiation of Bar Counsel's review of Respondent's actions. Respondent's position, however, loses persuasive force when considering the following specific factual finding made by the hearing judge:

Between January 13, 2006 and March 30, 2007 Respondent disbursed from his attorney trust account, as fee payment for services rendered to Melvin Campbell, the following amounts: ... January 10, 2007, check 2115 for $9,000.00....

The $9,000.00 (check 2115) payment that Respondent made to himself utilized funds that Respondent was obligated to hold in trust for clients Ruth and William Bratten. At the time of the payment to himself Respondent was required to have had $2,657.02 in his attorney trust account for the benefit of the Brattens. Upon presentment of check 2115 for $9,000.00 the balance of his attorney trust account became $1,148.23, below what he was required to be holding for the Brattens.

Respondent admitted that he removed money from his attorney trust account for personal reasons and placed Mr. Campbell's name on the memo line of the check.

spects"; 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." We agree with Judge Bernhardt's conclusions.

With respect to MRPC 8.4(b), which addresses criminal conduct, Business Occupations and Professions Art. § 10-606(b) provides:

> A person who willfully violates any provision of Subtitle 3, Part I of this title [which includes § 10-306], except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10-303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.

In *Attorney Grievance Commission v. Nussbaum*, 401 Md. 612, 934 A.2d 1 (2007), we described the interplay between MRPC 8.4(b) and Business Occupations and Professions Art. §§ 10-306 and 10-606(b) as follows:

> Petitioner also took exception to Judge Hughes' conclusion that Respondent did not violate MRPC 8.4(b) because while "the Respondent did violate the Business Article, . . . that is not a criminal statute, and therefore a violation is not necessarily a criminal act." Petitioner argues that Respondent was found to violate Section 10-306 of the Business Occupations and Professions Article and that pursuant to Section 10-606(b) of that Article, the willful violation of Section 10-306 is a misdemeanor subject to a fine not exceeding $5,000.00 or imprisonment not exceeding 5 years or both. Respondent does not directly address Section 10-606(b) but rather argues that the Petition for Disciplinary or Remedial Action did not specify the criminal act that would cause him to be found in violation of 8.4(b), a fact of which the hearing court took note. Respondent also stresses that the hearing court found that the misuse of trust money in this case did not constitute theft or embezzlement. Furthermore, Respondent argues that his replenishment of

the clients' funds removes his activities from the realm of criminal acts.

Petitioner correctly asserts that a willful violation of Section 10–306 is a misdemeanor under Section 10–606(b), which describes the penalties for willful violations of Subtitle 3, Part I of Title 10 of the Business Occupations and Professions Article. *See Attorney Grievance Comm'n v. Braskey*, 378 Md. 425, 452–53, 836 A.2d 605, 621–22 (2003). In *Braskey*, Judge Raker, writing for this Court, iterated that "[i]n order for a violation of 10–3[ ]06 . . . to constitute criminal conduct, the conduct must have been 'wilful.' " *Id.* at 453, 836 A.2d at 622. Not every violation of Section 10–306 is necessarily willful; willfulness must be found before the misuse of trust money can constitute a criminal act under 8.4(b). *Id.; Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 711–12, 810 A.2d 996, 1018–19 (2002). In the present case, the hearing judge never specifically found that Respondent's violations of Section 10–306 were willful. In concluding that Respondent violated MRPC 8.4(c), however, the hearing court did find by clear and convincing evidence that Respondent "engaged in dishonesty and deceit/misrepresentation by implicitly or explicitly misrepresenting to his clients that their escrow funds would be safeguarded, and that escrow funds disbursed were those being held by the Respondent on their behalf, when in fact they were not." Judge Hughes then listed a number of transactions which he found violated MRPC 8.4(c), identical to the list of instances which the hearing court found violated Section 10–306. The question before us, then, is whether a finding of "dishonesty and deceit/misrepresentation" is equivalent to a finding of willfulness under Section 10–606(b) and MRPC 8.4(b).

*Nussbaum*, 401 Md. at 634–36, 934 A.2d at 14–15 (footnote omitted). We held that a "finding of 'deceit/misrepresentation' is equivalent to a finding of willfulness to support a violation of Section 10–606(b) and thereby a violation of MRPC 8.4(b)." *Nussbaum*, 401 Md. at 637–38, 934 A.2d at 16.

In the present case, as opposed to the hearing judge's findings in *Nussbaum*, Judge Bernhardt concluded specifically that Respondent's violation of Business Occupations and Professions Art. § 10–306 was willful. We agree. *See supra.* Therefore, we also agree with his conclusion that Respondent's conduct violated MRPC 8.4(b). *See Nussbaum*, 401 Md. at 634–38, 934 A.2d at 14–17.

With respect to MRPC 8.4(c), for the same reasons that we find that Respondent's conduct amounted to a willful violation of Business Occupations and Professions Art. § 10–306, we agree with the hearing judge's conclusion that Respondent violated 8.4(c) as well. Thomas intentionally misrepresented that much of the funds he withdrew from his attorney trust account were for fees earned from clients who contributed significantly less, or not at all, to the trust account in the amounts Respondent withdrew. Respondent's conduct rises to conduct involving dishonesty and misrepresentation.

### D. Removing Fees Prior to Required Monies Being Posted to Attorney Trust Account

Judge Bernhardt found that, in handling funds for no less than seven clients, Respondent withdrew funds from his attorney trust account as fees earned for work completed for those clients before the funds that would permit the disbursements were deposited into the trust account. Based on these findings, the hearing judge concluded that Thomas violated MRPC 1.15(a) and Business Occupations and Professions Art. § 10–306. Respondent's exception to these conclusions is that no violation of these provisions occurred because the "funds withdrawn were from [Respondent's] previously earned fees." Even were we to agree with this contention, which we do not, Respondent's conduct still would be in violation of MRPC 1.15(a) because his failure to withdraw the previously earned fees from his attorney trust account violates 1.15(a)'s prohibition against commingling attorney and client funds. With specific regard to the hearing judge's findings as to premature withdrawal, however, we conclude that Petitioner failed to show by clear and convincing evidence that Re-

spondent's conduct was a violation of Business Occupations and Professions Art. § 10–306.

### E.  Taking Excessive Fees

Judge Bernhardt found that, in depositing funds into and withdrawing funds from his attorney trust account with respect to clients Hatch and Dixon, Respondent withdrew $2,611.00 more than he deposited on behalf of these respective clients as fees earned or costs incurred.  The hearing judge also noted that Respondent admitted to the Commission that he disbursed more funds from his attorney trust account in fees and costs than were deposited in the account on behalf of these two clients.  The hearing judge concluded that Respondent's conduct violated Business Occupations and Professions Art. § 10–306 and MRPC 1.15(c).

We agree with the conclusion that Thomas' conduct violated MRPC 1.15(c).  MRPC 1.15(c) requires a lawyer to deposit legal fees and expenses that have been paid in advance into a trust account, and specifies that the lawyer may withdraw such funds for the lawyer's own benefit "only as fees are earned or expenses incurred."  By withdrawing the $2,611.00 from his attorney trust account for clients Hatch and Dixon, under the circumstances noted, Respondent's conduct violated MRPC 1.15(c).  With regard to these specific charges stemming from Respondent's handling of funds for clients Hatch and Dixon, however, we conclude that Petitioner failed to prove that Respondent's conduct was a violation of Business Occupations and Professions Art. § 10–306.

### F.  Deposit of Advance Fees into General Operating Account

The hearing judge found that, in the course of representing client Russell, Respondent was paid a $1,000.00 retainer fee, and placed the entire fee directly into his general operating account.  Thomas was billing Russell at $200 per hour.  He claimed that he believed, at the time he deposited the fee, that he had completed all but thirty minutes or so worth of work for Russell.  Respondent also testified that he

believed he would be completing that further work in the near future to earn the rest of the retainer fee. When Russell ultimately demanded the return of the retainer, however, Thomas refunded the entire amount. Judge Bernhardt found that Respondent's conduct violated Business Occupations and Professions Art. §§ 10–304 and 10–306, and MRPC 1.15(a).

We agree with the hearing judge's conclusions that Respondent's conduct violated Business Occupations and Professions Art. § 10–304, and MRPC 1.15(a). Business Occupations and Professions Art. § 10–304(a) mandates that "a lawyer expeditiously shall deposit trust money into an attorney trust account." Respondent's placement of the entire retainer fee received from Russell, including at least a portion not yet earned, into his general operating account violates § 10–304(a). Similarly, Respondent's conduct violates MRPC 1.15(a)'s requirement that a lawyer hold property of clients that is in the lawyer's possession separate from the lawyer's own property. Thomas' conduct in handling the retainer fee for client Russell, however, was not proven to be in violation of Business Occupations and Professions Art. § 10–306.

### G.   Rejected Mitigation

We agree with the hearing judge's conclusions that Respondent failed to show mitigation, by a preponderance of the evidence, for the three rejected bases described *supra*. With respect to the first, a lack of understanding of the regulatory requirements, Respondent testified that, although he was aware of the Maryland Rules governing attorney trust accounts, he had little actual knowledge of the obligations created by the Rules. Thomas testified that he believed his only clear obligation was to maintain a positive balance in the account. He conceded that he was using his trust account as a savings account. Respondent claimed that any violations of the Maryland Code, Maryland Rules, or the MRPC were unintentional.

The hearing judge did not find Respondent's testimony credible, noting a discrepancy between his testimony that he believed his only responsibility regarding his trust account

was to keep a positive balance and his testimony that his intention in building a "cushion" in the account was to be able to pay settlement funds to clients before the settlement checks cleared. Judge Bernhardt also found that, by hiring an accountant to reconcile his account after the first few years of practice, and then hiring another accountant in 2003 for the same purpose, Respondent "manifested sufficient understanding of his professional responsibilities to know that his account needed to be reconciled." The hearing judge expressed doubt as to Respondent's credibility also because Thomas fired the second accountant when advised that the account was beyond reconciliation. He then waited years until Bar Counsel became aware of his conduct before closing his trust account.

As we have indicated previously, although we conduct an independent review of the record, we accept the hearing judge's findings of fact unless those findings are found to be clearly erroneous. *Ugwuonye,* 405 Md. at 368, 952 A.2d at 235–36 (citing *Att'y Grievance Comm'n v. Zdravkovich,* 375 Md. 110, 126, 825 A.2d 418, 427 (2003)). The hearing judge had the opportunity to assess the credibility of Respondent's testimony, and to draw reasonable inferences from it. Judge Bernhardt found specifically that Respondent, unlike the hearing judge who found that the attorney in *Awuah* commingled funds due to ignorance of the pertinent rules, failed to meet his burden of proof. *See Awuah,* 346 Md. at 432, 697 A.2d at 452 ("[T]he respondent on a single occasion directly transferred, *albeit,* accidentally, client trust funds into an operating account and on several occasions wrote checks to cash out of what he maintained as a trust account. While indeed violations of Rule BU9, Judge Mason viewed them, and so concluded, as unintentional. In a similar vein, noting his further finding that the respondent was ignorant of the obligation to refrain from commingling trust funds and his own and, in any event, 'was not motivated to use client funds for his own benefit,' Judge Mason opined that the Bar Counsel failed to produce 'clear and convincing evidence that at any time [the respondent] intentionally used client funds for any purpose other than that to which they were intended.'") (emphasis in

original). Moreover, Thomas' claim of ignorance of the requirements of the Rules is not a defense to the most serious offense charged against him—his intentional withdrawal of funds from his attorney trust account as earned fees for clients who contributed significantly less, or not at all, to his trust account. Thus, we agree with the hearing judge's finding that Respondent did not meet his burden of proof.

With respect to the matter of the mental health issues, we agree with the hearing judge's conclusion that Respondent did not show by a preponderance of the evidence that these issues amounted to a matter of mitigation of his conduct. In *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001), we announced:

> [W]hen we are considering offenses relating to honesty, especially where there is any type of theft or intentional misappropriation of funds or other serious criminal conduct, there ... needs to be almost conclusive, and essentially uncontroverted evidence that would support a hearing judge's finding not only that the attorney had a serious and debilitating mental condition, but that the mental condition, in a sustained fashion, affected the ability of the attorney in normal day to day activities, such that the attorney was unable to accomplish the least of those activities in a normal fashion. Unless that standard is met the impairment is not "the root cause" of the misconduct.

*Vanderlinde*, 364 Md. at 418–19, 773 A.2d at 488. In the present case, as Judge Bernhardt described, Respondent did not present the testimony of either of the doctors he had been seeing as to the effects of the medications he may have been taking or as to any medical condition which may have hampered his ability to manage his attorney trust account. Further, the hearing judge concluded from the evidence presented that Respondent had shown he was more than capable of managing his personal and professional affairs throughout the time period he supposedly was taking medications, including making all court appearances, paying mortgages on two properties and taxes on four properties, the lack of any competen-

▆▆▆▆▆▆▆▆▆▆▆▆▆

cy complaints, and Respondent's involvement in numerous social and fraternal clubs. Thus, the hearing judge concluded correctly that Respondent's health concerns did not rise to the level required under *Vanderlinde* as mitigation of his conduct.

▆▆▆▆ With respect to the final rejected matter of mitigation, the search for a new administrative assistant, we agree with the hearing judge that Respondent failed to show, by a preponderance of the evidence, that the retirement of his former assistant in 2005 mitigates his conduct. As Respondent acknowledged in his testimony, his former long-time assistant was not responsible for his trust account and ledgers. Simply put, the issues stemming from Respondent's handling of funds in his attorney trust account are not related to his former assistant's role in the operation and maintenance of his law practice while she was there.

### H. Summary of Actions on Exceptions

The following chart summarizes our resolution of Respondent's exceptions:

| Section of This Opinion | Respondent's Conduct | Charges | Action on Exceptions |
|---|---|---|---|
| VI.A | Failure to remove fees as earned from attorney trust account, thereby commingling earned fees with client funds; failure to keep adequate records | MRPC 1.15(a) | Respondent's exceptions overruled |
| | | Md. Rule 16-607(b)(2) | Respondent's exceptions overruled |
| VI.B | Withdrawing funds from attorney trust account for unauthorized purpose, resulting in negative balance in trust account | Md. Rule 16-609(c) | Respondent's exception sustained |
| | | Md. Rule 16-609 | Respondent's exceptions overruled |
| VI.C | Withdrawing funds from attorney trust account, and using such funds for unauthorized purposes, as fees earned for clients who contributed funds either significantly less, or not at all, to the trust account in the amounts withdrawn | MRPC 1.15(c) | Respondent's exceptions overruled |
| | | Md. Rule 16-609 | Respondent's exceptions overruled |
| | | Bus. Occ. & Prof. Art. § 10-306 | Respondent's exceptions overruled |
| | | Bus. Occ. & Prof. Art. § 10-307 | Respondent's exceptions overruled |
| | | MRPC 8.4(b) | Respondent's exceptions overruled |
| | | MRPC 8.4(c) | Respondent's exceptions overruled |

| VI.D | Withdrawing funds from attorney trust account as fees earned for work for clients before funds that would permit the disbursements were deposited in the trust account | MRPC 1.15(a) | Respondent's exceptions overruled |
|------|------|------|------|
| | | Bus. Occ. & Prof. Art. § 10-306 | Respondent's exception sustained |
| VI.E | Withdrawing more funds from attorney trust account as fees earned or costs incurred for clients Hatch and Dixon than was deposited on behalf of those clients in trust account | MRPC 1.15(c) | Respondent's exceptions overruled |
| | | Bus. Occ. & Prof. Art. § 10-306 | Respondent's exception sustained |
| VI.F | Depositing entire retainer fee from client Russell directly into general operating account | MRPC 1.15(a) | Respondent's exceptions overruled |
| | | Bus. Occ. & Prof. Art. § 10-304 | Respondent's exceptions overruled |
| | | Bus. Occ. & Prof. Art. § 10-306 | Respondent's exception sustained |

## *VII. Sanction*

In *Attorney Grievance Commission v. Siskind*, 401 Md. 41, 930 A.2d 328 (2007), we reiterated the primary intendment of the attorney discipline process:

The purpose of discipline ... is not to punish the lawyer, but to protect the public and the public's confidence in the legal profession. We protect the public through sanctions against offending attorneys in two ways: through deterrence of "the type of conduct which will not be tolerated," and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.

*Siskind*, 401 Md. at 75, 930 A.2d at 347–48 (quoting *Att'y Grievance Comm'n v. Gore*, 380 Md. 455, 471–72, 845 A.2d 1204, 1213 (2004)) (citations omitted). In *Attorney Grievance Commission v. Dunietz*, 368 Md. 419, 795 A.2d 706 (2002), we articulated a non-exclusive list of several factors we consider

when determining the appropriate sanction in an attorney disciplinary action, including

> '[A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; and finally, remoteness of prior offenses.'

*Dunietz,* 368 Md. at 430, 795 A.2d at 712 (quoting *Att'y Grievance Comm'n v. Jaseb,* 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001)).

We long have held that acts of dishonesty, fraud, or misleading behavior frequently result in a sanction of disbarment. In *Vanderlinde,* 364 Md. 376, 773 A.2d 463, we commented generally that,

> [u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.
>
> Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*Vanderlinde,* 364 Md. at 418, 773 A.2d at 488. We have also noted that "[t]actics involving dishonesty, fraud, or deceit, carry the risk of the ultimate sanction by this Court." *Siskind,* 401 Md. at 75, 930 A.2d at 348 (quoting *Att'y Grievance Comm'n v. White,* 354 Md. 346, 366, 731 A.2d 447, 458 (1999)); *see also Att'y Grievance Comm'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994) ("Candor and truthfulness are two of the most important moral character traits of a lawyer.").

Respondent urges a sanction within the range of a reprimand up to an indefinite suspension (with the right to apply

for reinstatement after ninety days), on the premise that Respondent's conduct resulted from negligence, rather than from any improper motive. Bar Counsel urges disbarment.

We have considered on several prior occasions the appropriate sanction for attorneys who mishandle their attorney trust accounts, with the sanctions imposed ranging from indefinite suspension, with permission to apply for reinstatement after ninety days, to disbarment. In *Attorney Grievance Commission v. DiCicco*, 369 Md. 662, 802 A.2d 1014 (2002), we held that the appropriate sanction for an attorney who allowed his trust account to fall out of trust on several occasions over a four year period was an indefinite suspension with the right to seek reinstatement after 90 days. *DiCicco*, 369 Md. at 688, 802 A.2d at 1028. Our holding was based on our affirmance of the hearing judge's conclusion that the attorney's trust account fell out of trust due to the attorney's negligence, rather than the attorney's intent to defraud; thus, the suspension was commensurate with our conclusion that the attorney's conduct did not violate MRPC 8.4(c) or Business Occupations and Professions Art. § 10–306. *DiCicco*, 369 Md. at 680, 685, 686–88, 802 A.2d at 1024, 1027–28. Similarly, in *Attorney Grievance Commission v. Sperling*, 380 Md. 180, 844 A.2d 397 (2004), we found that the appropriate sanction for an attorney who, through negligence, allowed his attorney trust account to experience a shortfall of $42,415.91, did not take appropriate remedial steps to bring the account into balance for at least nine months, and had three previous disciplinary matters, was an indefinite suspension, with the right to apply for reinstatement for ninety days. *Sperling*, 380 Md. at 184, 186–87, 188, 193, 844 A.2d at 399, 401, 402, 405. Central to our holding in favor of a potentially brief minimum suspension period (in an indefinite suspension context) were the affirmed factual findings by the hearing judge that there was no evidence of any theft of funds from the account, no evidence that the attorney engaged in improper commingling of personal funds with trust funds, and no evidence that any client or person for whom the attorney was holding funds suffered a loss due to the attorney's administration of the account. *Sperling*, 380 Md. at 185,

844 A.2d at 400; *see Sperling,* 380 Md. at 192, 844 A.2d at 404 ("Therefore, we recognize that, while ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant to the appropriate sanction and consistent with the purpose of a disciplinary proceeding." (citing *Awuah,* 346 Md. at 435–36, 697 A.2d at 454)).

In *Attorney Grievance Commission v. Herman,* 380 Md. 378, 844 A.2d 1181 (2004), however, we found disbarment to be the appropriate sanction for an attorney who, while handling several hundred collection cases on behalf of a collections agency, and having become overwhelmed in his personal and professional life, failed to disburse from his trust account the funds owed to the collection agency, and instead disbursed the funds to himself for personal uses. *Herman,* 380 Md. at 384–89, 844 A.2d at 1185–89. There we made it clear that despite the recent troubles in the attorney's office, including the failure of his computer system, the departure of his secretary, and the resultant difficulty encountered with his filing system, *Herman,* 380 Md. at 399–400, 844 A.2d at 1194, allowing his trust account to fall out of trust knowing that certain funds in the account were owed to others warranted the attorney's disbarment. *See Herman,* 380 Md. at 404, 844 A.2d at 1197 ("Respondent even concedes that his 'personal crises and professional difficulties are not mitigating circumstances,' but instead he suggests that they are offered as proof of his lack of intent to steal client funds. Unfortunately, Respondent overlooks the fact that the hearing judge did not believe Respondent's explanation for taking his client's money and failing to account to the client the status of the escrow account. In other words, Mr. Herman presented no ethical or legal justification for his conduct."). Likewise, in *Attorney Grievance Commission v. Zdravkovich,* 381 Md. 680, 852 A.2d 82 (2004), we found that disbarment was the appropriate sanction for an attorney who gradually invaded a client's $15,552.00 deposit in the attorney's trust account, which was entrusted to the attorney for the purchase of a motorcycle for

the client, to pay for his firm's operating expenses. *Zdravkovich*, 381 Md. at 697, 705, 852 A.2d at 92, 96.

In the present case, we find that Respondent's conduct is more akin to the forms of conduct confronted in *Herman* and *Zdravkovich*. We distinguish Respondent's misconduct from the conduct addressed in *DiCicco* and *Sperling* because Respondent's actions/inactions amounted to a violation of Business Occupations and Professions Art. §§ 10–306 and 10–307 and MRPC 8.4(b) and (c). Also, although the hearing judge in the present case found that no client suffered a loss, we have articulated previously that intentional misappropriation of client funds will warrant the most severe of penalties. *See Zdravkovich*, 381 Md. at 704, 852 A.2d at 96 ("Although in this case the client suffered no actual financial loss, 'misappropriation is a most egregious violation even without actual loss, because the failure to keep client funds separate subjects the funds to the claims of creditors of the lawyer. The rule is concerned with the risk of loss, not only the actual loss.'" (quoting *Att'y Grievance Comm'n v. Glenn*, 341 Md. 448, 489, 671 A.2d 463, 483 (1996))).

There are two notable considerations which compel us to conclude that Respondent's misconduct amounts to serious violations. The first is that, as the hearing judge found, Respondent, on at least ten occasions, withdrew funds from his attorney trust account as fees earned from clients who contributed either significantly less, or not at all, to Respondent's trust account in the amounts withdrawn. Although Respondent claimed that, due to his prior practice of leaving earned fees in the trust account to "build a cushion," the later withdrawal of funds were of funds that belonged to him, the hearing judge observed that Thomas offered no evidence whatsoever of any specifics of his prior practices, including when he began the practice, how much in fees he would allow to remain in the account, when he stopped the practice, or even how large the cushion may have become at various points in time, as corroboration of his general explanation. Also, Respondent was shown to have attributed the later withdraw-

als of what he perceived were earned fees to clients from whom he had not earned the fees. Thomas offered no explanation for the withdrawals he attributed to these clients, and on one occasion, even admitted that he removed funds from his trust account, for personal reasons, regarding a client from whom he had not earned the funds. Further, one of the withdrawals from the trust account resulted in Respondent invading funds he was required to hold in trust for another client. Although, as a result of that withdrawal, Respondent's trust account was only $1,508.79 short of what he was required to be holding in trust for the other client, we have made it clear that "an attorney's misappropriation of funds entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct." *Att'y Grievance Comm'n v. Pattison*, 292 Md. 599, 609, 441 A.2d 328, 333 (1982).

Second, despite the fact that on two occasions Respondent employed accountants to reconcile his trust account, the first in 1993 or 1994 and the second in 2003, Respondent continued his practice of commingling earned fees with client trust funds in his trust account. The hearing judge specifically found that the accountant Respondent employed in 2003 advised Respondent that his trust account was beyond reconciliation. Instead of taking remedial action, Respondent terminated the services of the accountant and took no further action until Bar Counsel became involved, over three years after he fired the second accountant.

For all of these reasons, we conclude that the appropriate sanction is disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DAVID MOORE THOMAS.**