*Attorney Grievance Commission of Maryland v. Bruce August Kent*, Misc. Docket AG No. 13, September Term, 2015.  Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – ATTORNEY MISCONDUCT – DISBARMENT –** The Respondent, Bruce August Kent, violated Rules 1.1, 1.7, 1.8(a), 1.15(a) and (d), 8.1(a), and 8.4 (a), (b), (c) and (d) of the Maryland Lawyers' Rules of Professional Conduct, Maryland Rules 16-606.1 and 16-609, and Section 10-306 of the Business Occupations and Professions Article of the Maryland Code.  Disbarment is the appropriate sanction when an attorney, acting in the fiduciary role of trustee, knowingly misappropriates funds belonging to the trust, loans the trust's funds to other clients and family members, and knowingly makes a false statement during the investigation by Bar Counsel.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 13

September Term, 2015

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

BRUCE AUGUST KENT

_____

Barbera, C.J.,
*Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Hotten,

JJ.

_____

Opinion by Hotten, J.
Adkins, J., dissents.

_____

Filed:  April 25, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section
3A, she also participated in the decision and
adoption of the majority opinion.

This attorney discipline proceeding involves a lawyer who assisted a husband and wife in creating a revocable living trust, and thereafter engaged in a pattern of misconduct while acting in the fiduciary role of trustee.

Bruce August Kent ("Respondent") was admitted to the Maryland Bar on June 19, 1974. At all times relevant to this case, Respondent maintained a law office in Baltimore County.

The Attorney Grievance Commission of Maryland ("Petitioner") filed a Petition for Disciplinary or Remedial Action against Respondent on April 22, 2015.[1] Petitioner alleged that, as trustee of The McClelland Family Revocable Living Trust ("the McClelland Trust"), Respondent misappropriated funds entrusted to him in his fiduciary capacity, and violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), MLRPC 1.7 (Conflict of Interest: General Rule), MLRPC 1.8 (Conflict of Interest: Current Clients: Specific Rules), MLRPC 1.15 (Safekeeping of Property), MLRPC 8.1 (Bar Admission and Disciplinary Matters), MLRPC 8.4 (Misconduct), Md. Rule 16-606.1 (Attorney Trust Account Record-Keeping), Md. Rule 16-609 (Prohibited Transactions), and Md. Code (1989 Repl. Vol. 2010), § 10-306 of the Business Occupations and Professions Article ("Bus. Occ. & Prof.") (Trust Money Restrictions).[2]

---

[1] Petitioner filed an Amended Petition for Disciplinary or Remedial Action on September 14, 2015.

[2] The Maryland Lawyers' Rules of Professional Conduct are found in Md. Rule 16-812.

This Court transmitted the action to the Circuit Court for Baltimore County and designated the Honorable Colleen A. Cavanaugh to enter findings of fact and conclusions of law. On September 4, 2015, Judge Cavanaugh ("the hearing judge") sanctioned Respondent for failure to respond to Bar Counsel's written discovery requests. The sanctions included, *inter alia*, precluding Respondent from producing any evidence/witnesses at the disciplinary hearing, and deeming that all allegations in the Petition for Disciplinary or Remedial Action were admitted. On September 21, 2015, a hearing was held, and on October 22, 2015, the hearing judge issued Findings of Fact and Conclusions of Law. The hearing judge concluded "that there [was] clear and convincing evidence to support each of the charged violations[]" in the Petition for Disciplinary or Remedial Action.

On February 8, 2016, we heard oral argument. For the reasons that follow, we hold that the hearing judge did not abuse her discretion in imposing discovery sanctions, and we order that Respondent be disbarred.

## I. BACKGROUND

### a. The hearing judge's discovery sanction

On May 20, 2015, Charles J. Balint ("Mr. Balint"), counsel for Respondent, accepted service of process, including a copy of the Petition for Disciplinary or Remedial Action. Respondent thereafter obtained an extension of time to file a response to the Petition for Disciplinary or Remedial Action until June 17, 2015, but did not file a response until June 18, 2015.

On July 10, 2015, Mr. Balint and Deputy Bar Counsel ("Bar Counsel") appeared for a scheduling conference, and Bar Counsel hand delivered interrogatories and a request for production of documents to Mr. Balint. Mr. Balint and Bar Counsel agreed to several deadlines that were incorporated into a scheduling order. The order established a deadline for the completion of written discovery by August 17, 2015, and completion of all discovery by September 4, 2015. Respondent was not present at the scheduling conference.

On September 2, 2015, Petitioner filed a Motion for Sanctions for Failure of Discovery, and an accompanying Motion to Shorten Time for Respondent to Respond. According to Petitioner's Motion for Sanctions, Respondent had thirty (30) days to respond to the interrogatories and request for production of documents that were hand delivered on July 10, 2015, and thirty (30) days to respond to an additional request for production of documents that was mailed to Mr. Balint on July 24, 2015. *See* Md. Rules 2-421(b) and 2-422(c). Despite an understanding between Bar Counsel and Mr. Balint that written discovery responses would be received by August 28, 2015,[3] no responses were received as of September 1, 2015.

Petitioner alleged that the Motion to Shorten Time to Respond was necessary because "Respondent's failure to provide written discovery greatly prejudice[d] the ability of Petitioner's counsel to prepare to take Respondent's deposition[,]" which was scheduled, by agreement of counsel, for September 8, 2015. Petitioner also contended that, "[g]iven

---

[3] While August 28, 2015, was beyond thirty days from the dates on which Respondent was served with the discovery requests, a letter sent from Bar Counsel to Mr. Balint indicates that the parties had agreed on this deadline during a phone conversation.

the short period of time allowed to conduct discovery prior to trial in disciplinary matters, compliance with discovery requirements and deadlines is imperative."

The hearing judge granted the Motion to Shorten Time to Respond on September 2, 2015, and ordered a response by 11 a.m. on September 4, 2015. When no response was received by the September 4 deadline, the hearing judge imposed the following sanctions: the averments in the Petition for Disciplinary or Remedial Action were deemed admitted; Respondent's Response to the Petition for Disciplinary or Remedial Action was stricken; Respondent was precluded from calling any witnesses or presenting any documents at trial; and Respondent was prohibited from asserting any affirmative defenses, mitigation, or extenuation.

On September 8, 2015, Respondent filed a Response to Petitioner's Motion for Sanctions and a Motion to Reconsider. In the Motion to Reconsider, Respondent alleged that Mr. Balint was not in his office from 12:50 p.m. on September 2, 2015, until 9:30 a.m. on September 4, 2015. Thus, Mr. Balint would not have been able to respond by the shortened deadline. In the Response to Petitioner's Motion for Sanctions, Respondent noted that he had been outside of Maryland and had electronically forwarded discovery material to Mr. Balint, who was unable to open the email attachment. The hearing judge denied the Motion to Reconsider without a hearing.

On September 21, 2015, the parties appeared for a hearing on the merits of Respondent's violations. At the outset of the hearing, Mr. Balint informed the judge that Respondent wanted to be heard on the discovery sanctions. Respondent explained that he advised Mr. Balint in June that he had a vacation scheduled on August 22 or 23, 2015.

- 4 -

Respondent informed the hearing judge that he received the request for production of documents and interrogatories from Mr. Balint on Friday, August 14, 2015, and had three trials the following week. However, Respondent believed that he had until September 14, 2015, to complete the discovery responses because he thought that the requests had been received on August 14, 2015, the day Mr. Balint sent them to him. According to Respondent, he intended to finish his discovery responses when he returned from vacation on September 6, 2015, and was entirely unaware of the September 4, 2015, deadline for discovery.

The hearing judge again denied Respondent's Motion to Reconsider the discovery sanctions, noting that Respondent had failed to provide "[a] compelling reason to further delay these proceedings that are… on a very tight timeline pursuant to the rules." The hearing judge granted Mr. Balint's motion to withdraw in light of Respondent's representations concerning his counsel. The hearing proceeded with Respondent *pro se*, and concluded later that day.

### b. Respondent's Motion for Reconsideration

On October 14, 2015, after the conclusion of the hearing, Respondent filed a Motion for Reconsideration and for Appropriate Relief with the assistance of new counsel. Respondent requested that the hearing judge strike the order "precluding Respondent from submitting evidence in defense of Petitioner's allegations and deeming as admitted the averments in the Petition for Disciplinary or Remedial Action[.]" Respondent again alleged that "Mr. Balint failed to provide him with Bar Counsel's written discovery requests in a timely manner and to otherwise represent him in a competent manner."

Respondent alleged that reconsideration was appropriate where he participated in the September 8, 2015 deposition, "provided Answers to Interrogatories and produced many of the requested records" after the hearing judge's imposition of sanctions, and was currently "in the process of having reconciliations performed for his IOLTA and Trust bank accounts by an accounting/bookkeeping professional[]" so that he could fully comply with Petitioner's request for documents.

On October 22, 2015, the hearing judge filed a Memorandum Opinion denying Respondent's Motion for Reconsideration.[4] The hearing judge reasoned:

> Respondent's discovery violations are severe, substantial and ongoing. To date, Respondent has yet to fully respond to the discovery served upon him on July 10 and July 17, 2015.[5] Respondent proffers that he is "in the process of having reconciliations performed for his IOLTA and Trust bank accounts by an accounting/bookkeeping professional. Respondent anticipates that these reports will be completed, and made available to Bar Counsel within the next twenty (20) days." See *Respondent's Motion at pp. 3-4.* However, Respondent has had formal notice of these proceedings for nearly five months – since May 20, 2015 – and actual notice of Bar Counsel's inquiry for many months more. Any reconciliation of Respondent's professional banking accounts in preparation for these proceedings should been initiated, at a minimum, before the scheduled hearing date in this matter.
>
> Respondent initially claimed that his discovery failures were due to his counsel's failure to send him the discovery requests in a timely fashion; however, three months after those requests were served, discovery is still not complete. This court found Respondent's explanation for his discovery violations incredible at trial and the scant proof offered by Respondent to

---

[4] The hearing judge filed an amended opinion on November 4, 2015 to correct the caption in the original opinion.

[5] The hearing judge may have misspoke when referencing a discovery request served on July 17, 2015. According to the Notices of Service of Discovery filed in the circuit court, Bar Counsel served discovery requests on Respondent on July 10 and 24, 2015.

bolster his claim supports the court's conclusions. *See*[] *Defendant's Exhibit 1*. This court and Petitioner have both been severely prejudiced by Respondent's discovery failures which continue to the date of this opinion and are anticipated to continue, by Respondent's own estimate, through the filing date for this court's findings of fact and conclusions of law. Therefore, the prejudice suffered by Petitioner, this court and Maryland's Court of Appeals due to Respondent's continued delay will not be cured by a simple continuance or postponement of this matter.

### c. **The hearing judge's findings of fact**

On October 22, 2015, the hearing judge filed Findings of Fact and Conclusions of Law. The findings of fact were as follows:

On January 27, 2005, John and Sally McClelland (husband and wife) signed a Trust Agreement drafted by Respondent as their attorney. This agreement established "The McClelland Family Revocable Living Trust" (hereinafter "the McClelland Trust") with John and Sally McClelland designated as Trustees. John McClelland passed away on September 20, 2008. On October 11, 2010, Sally McClelland signed a Trustee Renunciation by which she relinquished her positon as the surviving Trustee of the McClelland Trust to Respondent, who was named in the original Trust Agreement to be appointed as Successor Trustee in the event John and Sally McClelland could no longer serve as trustee(s) "due to physical or mental incapacity, or death."

On March 1, 2011, Respondent opened a checking account in the name of the McClelland Trust (account number ending in 8938) at First Mariner Bank. The McClelland Trust also held additional assets, including funds invested in a brokerage account. From the time he took over as Successor Trustee in October 2010, Respondent was responsible for McClelland Trust financial accounts and for managing any funds entrusted to him in the fiduciary role of trustee.

From the time he took over as trustee, Respondent regularly deposited funds he received on behalf of the McClelland Trust into his attorney escrow account, which was also maintained at First Mariner Bank (account number ending in 1962), instead of depositing such funds into the McClelland Trust checking account. Respondent's escrow account at First Mariner was an account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. From October 2010 through September 2013, Respondent incrementally

- 7 -

deposited $281,651.95 of McClelland Trust funds into his attorney escrow account.

On December 17, 2010, Respondent made a loan in the amount of $40,000 to Mangia Bene, LLC, a business entity owned by Greg Orendorff, one of Respondent's clients, by issuing a check drawn on Respondent's attorney escrow account. Respondent designated this transaction as a loan of McClelland Trust funds from his escrow account. Respondent did not engage independent legal counsel to represent the McClelland Trust regarding the $40,000.00 loan he made as trustee to a legal clients' business entity, nor did he advise the loan recipient in writing of the desirability of seeking independent legal advice before entering into a financial transaction with Respondent in his capacity as trustee of the McClelland Trust.

By November 2011, Respondent no longer maintained the accrued balance of McClelland Trust funds in his attorney escrow account. Bar Counsel's investigator, Mr. Fiedler, testified concerning his analysis of escrow account bank records obtained by subpoena from First Mariner Bank and the Quicken Register report Respondent provided in the course of Bar Counsel's investigation. From those records, Mr. Fiedler was able to compile a "Negative Balance Chart" (Tab 24 of Petitioner's Exhibit 1) demonstrating that on November 25, 2011, the overall balance in Respondent's escrow account was only $88,572.21 at a time when Respondent should have been holding $95,443.73 in the account solely for the McClelland Trust client matter.

The McClelland Trust negative balance subsequently increased. By March 2012, Respondent's overall escrow account balance was drawn down to an amount under $17,000.00. No significant disbursements of McClelland Trust funds occurred during this period. As just one snapshot of the deficiency in McClelland Trust funds, on March 21, 2012, the overall balance in Respondent's escrow account was at $16,300.90. At that time, he should have still had $91,693.73 in the account solely for the McClelland Trust matter. Respondent therefore has an escrow account deficiency of $75,392.83 with regard to the individual client matter of the McClelland Trust.

Mr. Fiedler pointed out in his testimony that Respondent personally benefited from the misappropriation of McClelland Trust funds. From November 17-25, 2011, Respondent issued four checks totaling $13,734.00 payable to himself, including two checks (numbered 3108 and 3113) with no memo notation identifying any client matter. This issuance of such checks

- 8 -

contributed to the initial negative balance on McClelland Trust funds on November 25, 2011. Thereafter, throughout 2012 and 2013, Respondent continued to draw checks payable to himself, including many that included no memo notation.

* * *

This court finds by clear and convincing evidence that Respondent knowingly and intentionally misappropriated funds entrusted to him as trustee of the McClelland Trust and that he derived personal benefit from the use of the misappropriated funds.

As averred in paragraph 10 of the original and amended petitions, Respondent also drew numerous checks to cash on his attorney escrow account[.]… Petitioner does not contest that the cash obtained from these checks was deposited into Sally McClelland's personal checking account at Wachovia (later Wells Fargo) Bank during her lifetime, but the drawing of checks payable to cash nevertheless constituted a prohibited transaction under Maryland Rule 16-609b.

Sally McClelland passed away on March 24, 2013. At the time of her death, the McClelland Trust checking account at First Mariner Bank had a balance of only $303.40. On April 24, 2013, Respondent deposited $41,664.87 to the McClelland Trust checking account, constituting the aggregate sum from three separate bank accounts maintained by Sally McClelland at the time of her death.

On April 24, 2013, Respondent issued check number 1204 drawn on the McClelland Trust checking account in the amount of $11,602.00 payable to Duda-Ruck Funeral Home of Dundalk in payment of Sally McClelland's funeral expenses. On the same date, he issued a check number 1203 drawn on the McClelland trust checking account in the amount of $3,000.00 payable to "Herkimer Street LLC," a forfeited business entity of which Respondent and his wife Marjorie were the sole members. Respondent knowingly issued this check as an unauthorized disbursement of McClelland Trust funds for his personal benefit.

On May 11, 2013, Respondent issued a check number 1205 drawn on the McClelland Trust checking account in the amount of $10,000 payable to "Kenwalls II, LLC." The memo line on the check identified it as "Loan." Kenwalls II, LLC is a business entity owned and organized by Brian E. Walls, Respondent's son-in-law, to purchase, remodel and sell homes. Respondent did not engage independent legal counsel to review the terms of

the transaction on behalf of the McClelland Trust when making this loan to his son-in-law's business.

On May 31, 2013, Respondent authorized a $15,000.00 wire transfer of funds from the McClelland Trust checking account to Brian Walls. This transaction was designated as a loan secured by a mortgage on a parcel of real property Mr. Walls owned in Camden County, Missouri. Respondent did not engage independent legal counsel to review the terms of the transaction on behalf of the McClelland Trust when making this personal loan to his son-in-law.

In August 2013, legal counsel for First Mariner Bank wrote to Bar Counsel to report concerns about the activity in the McClelland Trust checking account, including issuance of the checks to Herkimer Street LLC and Kenwalls II LLC and the wire transfer to Brian Walls. In response to Bar Counsel's initial inquiry letter, Respondent, through counsel, falsely claimed that the $3,000.00 check to Herkimer Street LLC "was drawn on the wrong account" in error. Only after receiving notice of the complaint did Respondent return $3,000.00 to the McClelland Trust checking account by depositing a check (drawn on the Kenwalls II, LLC checking account) on September 26, 2013.

Following commencement of Bar Counsel's investigation. Respondent obtained repayments of the three outstanding loans of McClelland trust funds from Mangia Bene LLC, Kenwalls, II LLC and Brian Walls.

In the course of Bar Counsel's investigation, Respondent provided an accounting of McClelland Trust funds that did not accurately account for all funds entrusted to him in a fiduciary capacity. Respondent did not create and maintain a client matter record that complied with the requirements of Maryland Rule 16-606.1(a)(3) for the McClelland Trust funds in his attorney escrow account.

On April 4, 2013, Respondent deposited a check issued by Pershing/Founders Financial Securities LLC, payable to "The McClelland Family Rev. Trust" in the amount of $15,000.00, into his attorney escrow account. Respondent did not include that deposit in the accounting of McClelland Trust funds provided to Bar Counsel's investigator in January 2014 during the investigation of the complaint prior to the filing of public charges (Tab 17 of Petitioner's Exhibit 1). Respondent added the $15,000.00 deposit to a revised 'McClelland-IOLTA Report" (Tab 25) he produced to

Petitioner when he appeared for his deposition in this matter on September 8, 2015.

### d. The hearing judge's conclusions of law

Based on the above findings of fact, the hearing judge concluded that there was clear and convincing evidence that Respondent had violated MLRPC 1.1, 1.7, 1.8(a), 1.15(a) and (d), 8.1(a), 8.4(a)-(d), Maryland Rules 16-606.1 and 16-609, and Bus. Occ. & Prof. § 10-306.

### Rule 1.1

MLRPC 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The hearing judge concluded that "[b]y failing to act in a manner consistent with the stated disposition objectives of the McClelland Trust Settlors (John and Sally McClelland),… Respondent did not provide competent representation to the McClelland Trust." (citing *Attorney Grievance Comm'n v. Sachse*, 345 Md. 578, 585-86, 693 A.2d 806, 810 (1997) (lawyer's failure to use knowledge, skill, thoroughness and preparation reasonably necessary for protection of trust or its beneficiaries violated Rule 1.1).

**Rule 1.7[6]**

MLRPC 1.7 prohibits representation involving a conflict of interest, which exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." MLRPC 1.7(a)(2); *see Sachse*, 345 Md. at 588, 693 A.2d at 811 ("Conflicts of interest impair the trustee's ability to act on

---

[6] MLRPC 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

behalf of the beneficiaries with independent and disinterested judgment in the administration of the trust, the rationale being that it is generally not possible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction.") (citation omitted). The hearing judge concluded that Respondent's loans of McClelland Trust funds to another client's business, his son-in-law's business, and his son-in-law individually, violated MLRPC 1.7. The hearing judge also observed that Respondent, "[a]s the conflicted trustee", was incapable of waving the conflict of interest on behalf of the trust by giving informed consent. *See* MLRPC 1.7(b)(4).

## Rule 1.8[7]

MLRPC 1.8(a)(3) prohibits an attorney from "enter[ing] into a business transaction with a client unless … the client is advised in writing of the desirability of seeking and is

---

[7] MLRPC 1.8 provides, in relevant part:

(a) A lawyer shall not enter into a business transaction with a client unless:

    (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

    (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

    (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

    * * *

given a reasonable opportunity to seek the advice of independent legal counsel[.]" The hearing judge concluded that that this rule was violated where Respondent made a $40,000.00 loan of McClelland Trust funds to another client's business entity (Mangia Bene LLC), without advising his client "of the desirability of seeking independent legal advice concerning the financial transaction[.]" (citation omitted).

<strong>Rule 1.15 and Md. Rule 16-606.1</strong>

MLRPC 1.15(a) provides that "a lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property," and that such "[f]unds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules[.]" The hearing judge concluded that Respondent failed to comply with multiple provisions of Md. Rule 16-606.1:

> Respondent's record-keeping for the McClelland Trust matter, as contained in the "Register Report" provided to Mr. Fiedler in January 2014 (Tab 17), reflects inaccuracy in the recording of deposits and disbursements and does not comply with the specific requirements of Rule 16-606.1(a)(3). Moreover, Mr. Fiedler testified that Respondent did not produce a chronological transaction ledger, as required by Rule 16-606.1(a)(2), for all activity in the escrow account during the period of October 2010 through 2013. Finally, the recurring negative balances of McClelland Trust funds in the account at various points in time establish that Respondent was not performing the monthly reconciliations required by Rule 16-606.1(b).

The hearing judge also concluded that Respondent violated MLRPC 1.15(d), which provides that "a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive[.]" The hearing judge noted that Respondent should have deposited McClelland Trust funds into the McClelland

Trust checking account or "obtain[ed] some type of positive return rather than having the money remain stagnant in his escrow account."

## Rule 8.1

MLRPC 8.1(a) provides that "an applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not… knowingly make a false statement of material fact[.]" MLRPC 8.1(a). The hearing judge concluded that Respondent violated MLRPC 8.1(a) by falsely stating, "in his initial written response to Bar Counsel, that the $3,000.00 check (check number 1203) written to Herkimer Street LLC on April 24, 2013, drawn on the McClelland Trust checking account, was drawn on the wrong account in error." The hearing judge found that Respondent had knowingly drawn the $3,000.00 check on the McClelland Trust checking account.

## Rule 8.4

MLRPC 8.4 provides, *inter alia*, that "[i]t is professional misconduct for a lawyer to:"

> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>
> (d) engage in conduct that is prejudicial to the administration of justice
> …

- 15 -

The hearing judge concluded that Respondent violated each of the aforementioned subsections.

Relative to MLRPC 8.4(a), the hearing judge relied on the violations of MLRPC 1.1, 1.7, 1.8, 1.15, and 8.1 discussed previously.

Regarding MLRPC 8.4(b) and 8.4(c), the hearing judge ruled that Respondent had committed a violation of Md. Code (2002 Repl. Vol. 2012), § 7-113 of the Criminal Law ("Crim. Law") Article (Embezzlement-Fraudulent misappropriation by Fiduciaries) by "fraudulently and willfully appropriat[ing] funds from his attorney escrow account that he was holding as a fiduciary for the McClelland Trust… in a manner contrary to the requirements of his trust responsibility."[8]   The hearing judge further opined that Respondent's fraudulent misappropriation reflected adversely on his general fitness to practice law. (citing *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 203, 105 A.3d 533, 573 (2014) ("An attorney's conduct constitutes a violation of Rule 8.4(c) when an

---

[8] Crim. Law § 7-113 provides, in relevant part:

 (a) A fiduciary may not:

   (1) fraudulently and willfully appropriate money or a thing of value that the fiduciary holds in a fiduciary capacity contrary to the requirements of the fiduciary's trust responsibility; or

   (2) secrete money or a thing of value that the fiduciary holds in a fiduciary capacity with a fraudulent intent to use the money or thing of value contrary to the requirements of the fiduciary's trust responsibility.

- 16 -

attorney improperly removes funds and utilizes the money for his or her personal gain.")
(citation omitted)).

Concerning MLRPC 8.4(d), the hearing judge also ruled that "Respondent's abuse of his fiduciary position 'undermines public confidence that an attorney will maintain entrusted funds as a fiduciary and as required by law.'" (quoting *Id.* at 205, 105 A.3d at 574).

### Rule 16-609

Md. Rule 16-609, enumerating prohibited transactions relating to attorney trust accounts, provides:

> a. Generally. An attorney or law firm may not … use any funds for any unauthorized purpose.
>
> b. No Cash Disbursements. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer….
>
> c. Negative Balance Prohibited. No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

The hearing judge concluded that Respondent violated subsection (a) by using funds in the attorney trust account for his personal benefit; that Respondent violated subsection (b) by drawing instruments on the trust account payable to cash; and that Respondent violated subsection (c) by "disbursing funds from the account that created a negative balance with regard to the individual client matter of the McClelland Trust."

**Bus. Occ. & Prof. § 10-306**

Bus. Occ. & Prof. § 10-306 provides that "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Again, the hearing judge found that "Respondent knowingly and intentionally misappropriated funds entrusted to him as trustee of the McClelland Trust." According to the hearing judge, "[w]hen an attorney uses trust money for a purpose other than the purpose for which the trust money is entrusted to the lawyer, such misuse of funds violates the statutory provision of § 10-306."

**Mitigating and Aggravating Circumstances**

While Respondent was prohibited from presenting evidence in mitigation, the hearing judge considered several character witnesses who "testified favorably about Respondent's general character and integrity[.]" However, the hearing judge was "not persuaded that these favorable opinions of Respondent's character lessen[ed] the seriousness of the misconduct in this case."

The hearing judge also considered the aggravating factors reflected in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions:

> (a) prior disciplinary offenses;
> (b) dishonest or selfish motive;
> (c) a pattern of misconduct;
> (d) multiple offenses;
> (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
> (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
> (g) refusal to acknowledge wrongful nature of conduct;
> (h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

(k) illegal conduct, including that involving the use of controlled substances.

*Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions* (1992); *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 176, 994 A.2d 928, 945 (2010) ("In determining the appropriate sanction, we often look to the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions."). The hearing judge concluded that factors (b), (d), (f), (i), and (k) were implicated, as Respondent acted with a dishonest or selfish motive, committed multiple offenses, submitted a false statement during the disciplinary process, had substantial experience in the practice of law, and engaged in illegal conduct.

## II.   DISCUSSION

### a.  Standard of Review

The standard of review applicable in attorney disciplinary cases is as follows:

This court has original and complete jurisdiction over attorney disciplinary proceedings. *Attorney Grievance Comm'n v. Thomas,* 409 Md. 121, 147, 973 A.2d 185, 200 (2009). At the evidentiary hearing, Bar Counsel had the burden of proving his allegations in the disciplinary petition by clear and convincing evidence. *See* Md. Rule 16-757(b). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). "This deference accorded to the hearing judge's findings is appropriate, in part, because the fact finder is in the best position to assess the demeanor-based credibility of a witness." *Id. See also* Md. Rule 16-759(b)(2)(B). Findings of fact to which neither party takes exception may be treated by us as conclusively established. *See* Md. Rule 16-759(b)(2)(A) ("If no exceptions are filed, the Court may treat the findings of fact as established...."). "All proposed conclusions of law by the hearing judge, however, are subject to *de novo* review by this Court." *Thomas,* 409

Md. at 147, 973 A.2d at 201 (citing *Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 236 (2008)); Md. Rule 16-759(b)(1).

*Attorney Grievance Comm'n v. Edib*, 415 Md. 696, 706-07, 4 A.3d 957, 964 (2010).

### b. The hearing judge's discovery sanction

Respondent only excepts to the imposition of discovery sanctions. Respondent repeated his assertion that Mr. Balint failed to inform him of the deadlines for the completion of discovery, and also failed to inform him that Petitioner's discovery requests were received on July 10 and July 17, 2015. According to Respondent, the hearing judge, in her Findings of Fact and Conclusions of Law, "failed to consider … Respondent's uncontroverted rendition of the problems with his answering the interrogatories and request for production of documents."

Respondent also contends that the hearing judge's discovery sanctions were improper because "the more draconian sanctions, of dismissing a claim or precluding the evidence necessary to support the claim, are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court." (citing *Zachair, Ltd. v. Driggs*, 135 Md. App. 403, 438, 762 A.2d 991, 1010 (2000) (citing *Admiral Mortgage Inc. v. Cooper*, 357 Md. 533, 545, 745 A.2d 1026, 1032 (2000))). Respondent proffers that the hearing judge's Findings of Fact and Conclusions of Law failed to establish that Respondent's discovery violations were persistent, deliberate, or prejudicial.[9]

---

[9] Respondent contends that the hearing judge's order shortening the time to respond to the Motion for Sanctions amounted "to an [*ex parte*] ruling by the court without proper notice." However, Respondent concedes that this order was faxed to his counsel's office.

(continued . . . )

For the reasons outlined below, we hold that the hearing judge did not commit an abuse of discretion in imposing discovery sanctions.[10] *See Rodriquez v. Clarke*, 400 Md. 39, 56-57, 926 A.2d 736, 746-47 (2007) (noting that this Court reviews the circuit court's discovery sanctions under an abuse of discretion standard) (citing *N. River Ins. Co. v. Mayor of Baltimore,* 343 Md. 34, 47, 680 A.2d 480, 486-87 (1996)).

While Respondent correctly observes that "the more draconian sanctions, of dismissing a claim or precluding the evidence necessary to support a claim, are normally reserved for persistent and deliberate violations that actually cause some prejudice," *Admiral Mortgage*, 357 Md. at 545, 745 A.2d at 1032, we observe that the hearing judge "is entrusted with the role of administering the discovery rules and, as such, is vested with

---

(. . . continued)

Respondent also contends that faxing the order was improper under Md. Rule 1-324(a). However, nothing in the rule prohibits the clerk from sending an order via facsimile:

> Upon entry on the docket of (1) any order or ruling of the court not made in the course of a hearing or trial or (2) the scheduling of a hearing, trial, or other court proceeding not announced on the record in the course of a hearing or trial, the clerk shall send a copy of the order, ruling, or notice of the scheduled proceeding to all parties entitled to service under Rule 1-321, unless the record discloses that such service has already been made.

Md. Rule 1-324(a).

[10] While Respondent contends that the hearing judge ignored his explanation for the discovery violations in the Findings of Fact and Conclusions of Law, the hearing judge was not required to address Respondent's explanations at that time. The hearing judge had already addressed Respondent's explanations during the hearing on the morning of September 21, 2015, when Respondent ultimately dismissed Mr. Balint. The hearing judge also addressed Respondent's explanations in the Memorandum Opinion denying Respondent's Motion for Reconsideration of the discovery sanctions.

broad discretion in imposing sanctions when a party fails to comply with the rules."

*Attorney Grievance Comm'n v. Kreamer*, 404 Md. 282, 342, 946 A.2d 500, 535 (2008) (citations omitted); *Butler v. S & S P'ship*, 435 Md. 635, 650, 80 A.3d 298, 307 (2013) (quoting *Admiral Mortgage, Inc. v. Cooper,* 357 Md. 533, 545, 745 A.2d 1026, 1032 (2000)).

In exercising the discretion to impose an appropriate sanction, the hearing judge should consider the following *Taliaferro* factors:

> Principal among the relevant factors which recur in the opinions are whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance. Frequently these factors overlap. They do not lend themselves to a compartmental analysis.

*Id.* (quoting *Taliaferro v. State,* 295 Md. 376, 390-91, 456 A.2d 29, 37 (1983)). The hearing judge should also consider whether the violations were persistent and deliberate. *Admiral Mortgage*, 357 Md. at 545, 745 A.2d at 1032. Lastly, in reviewing the sanction imposed under the above factors, we only consider those grounds actually relied upon by the hearing judge. *N. River Ins. Co.*, 343 Md. at 47-48, 680 A.2d at 487 (noting that, in reviewing the hearing judge's discovery sanction for an abuse of discretion, we do not engage in "a search of the record for grounds, not relied upon by the trial court, which the appellate court believes could support the trial court's action.").

In the case at bar, the hearing judge's sanctions were proportionate to Respondent's violations when considered in light of the *Taliaferro* factors.

## Timeliness of the ultimate disclosure

Respondent did not provide any discovery responses until September 8, 2015, almost two months after the requests were served on Respondent's counsel on July 10, 2015. Additionally, as noted by the hearing judge in her Memorandum Opinion, Respondent had not fully responded to Petitioner's discovery requests as of October 22, 2015. Instead, Respondent was in the process of having reconciliations performed for his IOLTA and Trust bank accounts that would allow him to respond to Petitioner's request for documents. Therefore, after more than three months since the discovery requests were served, Respondent had not responded to all discovery requests.

## Reasons for the violation

The hearing judge "found Respondent's explanation for his discovery violations incredible at trial[.]" The hearing judge also noted that "the scant proof" offered to support Respondent's claim confirms the "incredible" nature of his explanations.

The proof the hearing judge referred to consisted of a printout of an email chain between Respondent and Mr. Balint. This email chain consisted of the following:

> Email from Respondent to Mr. Balint on September 3, 2015
> CJ, for what it's worth you didn't send the discovery until the 15th. There is no date on it so I thought you just received it and I had 30 days until you told me differently yesterday. I have most of the interrogatories done for review except the docs.

> Email from Mr. Balint to Respondent on September 4, 2015
> No I did not tell you differently yesterday. I told you well before you left. *You knew that the answers were due on August 28, 2015* and that I would be gone August 27 & August 28.

> Your court schedule and your flooding problem the weekend of August 21 occupied your time.

- 23 -

If these aren't in today, I don't know what the Court may do.

Your deposition is September 8, 2015 at 2:00 p.m. at the Attorney Grievance Commission's office in Annapolis.

[]

(emphasis added). Notably, the email authored by Mr. Balint stating that "[y]ou knew that the answers were due on August 28, 2015", contradicted Respondent's claim that he honestly believed he had until September 14, 2015 to complete his discovery responses.

The "incredible" nature of Respondent's explanation was further confirmed by the fact that Respondent provided conflicting explanations for his discovery violations. In his Response to Petitioner's Motion for Sanctions, filed on September 8, 2015, Respondent noted that he "[had been] out of the state and [had] electronically forwarded discovery material to [Mr. Balint,]" but Mr. Balint was unable to open the email attachments and therefore unable to complete discovery. However, during the disciplinary hearing and in his post-hearing Motion for Reconsideration, Respondent blamed his discovery violations on Mr. Balint's failure to keep him apprised of the deadlines. The hearing judge acknowledged these conflicting narratives at the disciplinary hearing, remarking "I don't know how these two tales really jive."

**Prejudice**

The hearing judge remarked, in her Memorandum Opinion, that "[t]his court and the Petitioner have both been severely prejudiced by Respondent's discovery failures[.]" That finding was supported by Respondent's provision of incomplete discovery responses on the morning of his September 8, 2015, deposition, essentially depriving Petitioner of

any meaningful opportunity to review the responses in advance. Respondent also failed to provide complete discovery responses by the date of the hearing in the circuit court. Thus, Petitioner's discovery in advance of Respondent's deposition was entirely non-existent, while discovery prior to the disciplinary hearing was severely limited.

**The possibility that prejudice could be remedied by a continuance**

At the hearing in this matter, the hearing judge reminded Respondent that attorney disciplinary proceedings are "on a very tight timeline pursuant to the rules." Those rules provide that, "the hearing shall be completed within 120 days after service on the [R]espondent of the order designating a judge[,]" Md. Rule 16-757(a), and "the written or transcribed [findings of fact and conclusions of law] shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing." Md. Rule 16-757(c). The authority to extend these deadlines is held by this Court only. Md. Rule 16-757(a) and (c).

At the time that the hearings judge imposed the discovery sanctions on September 4, 2015, the deadline for the completion of the hearing was September 22, 2015. That deadline had been established by an Order of this Court, which had already extended the time in which the hearing was to be held under Md. Rule 16-757(a). Additionally, at the time that Respondent filed his post-hearing Motion for Reconsideration on October 14, 2015, the hearing judge's findings and conclusions were due to be filed by November 4, 2015. According to Respondent's Motion for Reconsideration, he would need an additional 20 days from October 14 to complete his discovery responses because he was still waiting on a bookkeeping professional to perform a reconciliation.

- 25 -

Therefore, as illustrated above, the deadlines for the holding of a hearing and the filing of the findings/conclusions were fast approaching, and Respondent was unable to remedy his violations by either of these deadlines. The hearing judge was unable to ameliorate the prejudice that resulted from Respondent's discovery failures by continuing these deadlines, which are set by the Maryland Rules and subject to extension by this Court only.

**Persistence of Respondent's violations**

In addition to the *Taliaferro* factors, we hold that the hearing judge properly exercised her discretion in imposing discovery sanctions where Respondent's violations persisted throughout the proceedings below. Had Respondent made a good faith effort to comply with discovery after receiving the requests in mid-August, Respondent would not have been waiting on a bookkeeping specialist to generate documents in late October. The fact that Respondent's violations persisted through such an extended period "illustrates Respondent's dilatory approach to these proceedings[.]" Therefore, while Respondent labels the hearing judge's sanction "draconian," the persistent nature of Respondent's violations, the prejudice experienced by Petitioner, and the constraints of the various deadlines on the hearing judge made such a sanction appropriate.

### c. Exceptions

Aside from the exception to the hearing judge's discovery sanctions discussed above, neither party noted exceptions to the hearing judge's findings of fact or conclusions of law. Accordingly, we accept the findings of fact as established. *Edib*, 415 Md. at 706-07, 4 A.3d at 964; *see also Attorney Grievance Comm'n v. Good*, 445 Md. 490, 128 A.3d

- 26 -

54, 67 (2015) (noting that "we shall accept the hearing judge's 'findings of fact as established for the purpose of determining appropriate sanctions'" where neither Petitioner nor Respondent noted any exceptions) (citing Md. Rule 16–759(b)(2)(A)).  In addition, having reviewed the hearing judge's conclusions of law *de novo*, we agree that Petitioner demonstrated, by clear and convicting evidence, that Respondent violated MLRPC 1.1, 1.7, 1.8(a), 1.15(a) and (d), 8.1(a), 8.4(a)-(d), Maryland Rules 16-606.1 and 16-609, and Bus. Occ. & Prof. § 10-306.

### d.  This Court's sanction

Relying principally on "Respondent's knowing and intentional misappropriation of funds entrusted to him as a fiduciary," Petitioner contends that the appropriate sanction is disbarment.  We agree.

The purpose of this Court's sanction in an attorney disciplinary proceedings is to "protect the public rather than to punish the attorney…."  *See, e.g., Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 547, 886 A.2d 606, 615 (2005) (citations omitted).  We have observed that:

> the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated.... Moreover, such a sanction represents the fulfillment by this Court of its responsibility 'to insist upon the maintenance of the integrity of the bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute….'  Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules.... Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case.... The attorney's prior grievance history, as well as facts in mitigation, constitute part of those facts and circumstances.

- 27 -

*Attorney Grievance Comm'n v. Sperling*, 380 Md. 180, 191, 844 A.2d 397, 404 (2004) (quoting *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994)).

"[I]n the absence of compelling extenuating circumstances[,]" this Court has consistently held that acts of deceit or dishonesty, including the misappropriation of client funds entrusted to the attorney, will result in disbarment. *Attorney Grievance Comm'n v. Spery*, 371 Md. 560, 568, 810 A.2d 487, 491-92 (2002) (citing *Attorney Grievance Comm'n v. Culver,* 371 Md. 265, 808 A.2d 1251 (2002); *Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 655-56, 801 A.2d 1077, 1080 (2002); *Attorney Grievance Comm'n v. Vlahos,* 369 Md. 183, 186, 798 A.2d 555, 557 (2002); *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 475, 800 A.2d 782, 789 (2002); *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 410, 773 A.2d 463, 483 (2001); *Attorney Grievance Comm'n v. Sabghir,* 350 Md. 67, 84, 710 A.2d 926, 934 (1998); *Attorney Grievance Comm'n v. Ezrin,* 312 Md. 603, 608-09, 541 A.2d 966, 969 (1988); *Attorney Grievance Comm'n v. Nothstein,* 300 Md. 667, 687-88, 480 A.2d 807, 818 (1984); *Attorney Grievance Comm'n v. Silk,* 279 Md. 345, 347, 369 A.2d 70, 71 (1977)).

In *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 105 A.3d 533 (2014), we adhered to this principle, and imposed disbarment for violations remarkably similar to those in the case at bar. In that case, Hodes had been a member of the Maryland Bar for approximately 40 years, and had significant experience in the practice of estates and trusts. *Id.* at 145, 105 A.3d at 538. Hodes came to represent an elderly client with declining health, and drafted a last will and testament containing "certain trust provisions for which [Hodes]

was named as Trustee." *Id.* at 146, 105 A.3d at 539. Hodes also prepared a durable power of attorney, naming Hodes and another attorney in his office as "attorneys-in-fact, jointly or individually, with regard to [the client's] personal care and various financial and property transactions." *Id.*

Shortly after Hodes' client died from health complications, Hodes drew two checks on his client's checking account: one payable to a financial planning business owned by Hodes, and one payable to his wife. *Id.* at 151, 105 A.3d at 542. Hodes then backdated the checks to appear that they were issued prior to his client's death, and also drafted a fictitious invoice justifying these payments. *Id.* In addition, as a result of the last will and testament, the client's residuary estate was placed in a testamentary trust, and Hodes served as trustee. *Id.* at 153, 105 A.3d at 543. Under the terms of the will, Hodes was required to incorporate a charitable foundation and distribute the trust to the charitable foundation. *Id.* However, Hodes instead drew a check for $270,000 on the trust's checking account payable to a non-charitable business entity owned by him and his wife. *Id.* at 154; 105 A.3d at 544. The word "loan" was written on the memo line of this check. *Id.* The funds were thereafter transferred to a personal checking account in the name of Hodes and his wife, and used to pay various personal debts owed by Hodes. *Id.* at 154-55; 105 A.3d at 544-45.

Based on the above findings, the hearing judge concluded that Hodes had violated MLRPC 1.7 (Conflict of Interest), 1.15(d) (Safekeeping of Property), 8.1(a) (Disciplinary Proceedings), 8.4 (a)-(d) (Misconduct) and Bus Occ. & Prof. § 10-306. *Id.* at 167-68; 105 A.3d at 552. We agreed that Hodes violated MLRPC 1.7 (Conflict of Interest) when he "removed $270,000.00 … from the Trust Account to benefit himself and his wife, to the

detriment of the Trust beneficiaries to whom he owed a duty of loyalty[.]" *Id.* at 197-98, 105 A.3d at 569. We held that Hodes had also violated MLRPC 1.15(d) (Safekeeping of Property) by neglecting to distribute the trust funds to a charitable foundation, as was required under terms of his clients will. *Id.* at 198, 105 A.3d at 570. Regarding Bus Occ. & Prof. § 10-306 (Trust Money Restrictions), we observed that Hodes "willfully and intentionally removed $270,000.00 from the []Trust account to pay his personal debts and, therefore, violated Section 10-306." *Id.* at 200, 105 A.3d at 571.

In discussing MLRPC 8.1(a) (false statement in disciplinary matters), we agreed with the hearing judge that Hodes had knowingly made a false statement of fact under oath when "he claimed that he had executed a personal Guaranty for repayment of the $270,000.00 that he removed from the Trust Account, when in fact, he executed the Guaranty after Bar Counsel's investigation begun." *Id.* Regarding MLRPC 8.4(b), we noted that Hodes had committed "a criminal act that "reflect[ed] adversely on [his] honesty, trustworthiness or fitness as a lawyer…." *Id.* at 202, 105 A.3d at 572. In particular, we observed that Hodes had taken $270,000 of the trust's funds and used them to pay his personal debts, thereby violating Crim. Law §7-113(a). *Id.* at 203, 105 A.3d at 572. Based on the same conduct, we also held that Hodes had violated MLRPC 8.4(c) (conduct involving fraud or deceit): "[a]n attorney's conduct constitutes a violation of Rule 8.4(c) when an attorney improperly removes funds and utilizes the money for his own personal gain." *Id.* at 203, 105 A.3d at 573 (citing *Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 257, 950 A.2d 798, 808 (2008)). Lastly, regarding MLRPC 8.4(d) (conduct prejudicial to the administration of justice), we noted that Hodes' removal of trust funds to

- 30 -

pay his personal debts "undermin[ed] public confidence that an attorney will maintain entrusted funds as a fiduciary and as required by law." *Id.* at 204-05, 105 A.3d at 573 (quoting *Whitehead*, 405 Md. at 260, 950 A.2d at 810).

We held that, in addition to the above violations, several aggravating factors referenced in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions were implicated: "[Hodes] has embodied a dishonest and selfish motive, engaged in a pattern of misconduct, committed multiple offenses, testified falsely during the grievance investigation and has refused to acknowledge the wrongful nature of his conduct." *Id.* at 206, 105 A.3d at 575. We concluded that disbarment was the appropriate sanction where "Hodes' conduct was intentionally dishonest, fraudulent and demonstrative of a lack of the fundamental qualities of a lawyer: honesty, integrity and respect for the legal system." *Id.* at 211, 105 A.3d at 577.

Turning to the case at bar, both Respondent and Hodes abused their respective fiduciary positions of trust in a remarkably similar manner. Therefore, consistent with our decision in *Hodes*, disbarment is the appropriate sanction. *See Attorney Grievance Comm'n v. Whitehead*, 390 Md. 663, 674, 890 A.2d 751, 757 (2006) ("Even though attorney discipline is for the primary purpose of protecting the public, the bar and public policy are served best by determinations consistent with other Maryland sanctions for similar misconduct.").

First, like *Hodes*, Respondent engaged in the knowing misappropriation of his client's property. Respondent repeatedly withdrew unearned McClelland Trust funds from his attorney escrow account for his own personal benefit, and also drew a $3,000 check on

- 31 -

the McClelland Trust's checking account payable to Herkimer Street LLC, which was owned by Respondent and his wife. This criminal behavior reflected adversely on Respondent's fitness as a lawyer, MLRPC 8.4(b), was dishonest and fraudulent, MLRPC 8.4(c), and was "prejudicial to the administration of justice." MLRPC 8.4(d); *Attorney Grievance Comm'n v. Prichard,* 386 Md. 238, 247, 872 A.2d 81, 86 (2005) (holding that an attorney had violated Crim. Law § 7-113(a) by misappropriating client funds held in a fiduciary capacity, thereby establishing the criminal violation required under MLRPC 8.4(b)); *Hodes,* 441 Md. at 203, 105 A.3d at 573 ("[a]n attorney's conduct constitutes a violation of Rule 8.4(c) when an attorney improperly removes funds and utilizes the money for his own personal gain."); *Id.* at 204-05, 105 A.3d at 574 (noting that Hodes' removal of trust funds to pay his personal debts violated MLRPC 8.4(d) because it "undermin[ed] public confidence that an attorney will maintain entrusted funds as a fiduciary and as required by law.").

Also similar to *Hodes*, the hearing judge found several violations of MLRPC 1.7 (conflict of interest) where Respondent loaned McClelland Trust funds to his brother-in-law, his brother-in-law's business, and another client's business. Although these loans did not involve the same type of self-dealing as the loan in *Hodes*, Respondent's duty of loyalty to the McClelland Trust was obviously compromised when he negotiated financial transactions between the trust, his family and other clients. *See Sachse*, 345 Md. at 588, 693 A.2d at 811 ("Perhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the

- 32 -

beneficiar[ies] and must exclude all selfish interest and all consideration of the interests of third persons.") (citations omitted).

The above violations alone would justify disbarment, but again, like *Hodes*, Respondent made a knowingly false statement of fact to bar counsel in explaining the check made payable to Herkimer Street LLC. Respondent also acted with a dishonest or selfish motive, committed multiple offenses, submitted a false statement during the disciplinary process, had substantial experience in the practice of law, and engaged in illegal conduct. *See Standard 9.22 (b), (d), (f), (i) and (k) of the American Bar Association Standards for Imposing Lawyer Sanctions* (1992) (enumerating the aggravating factors in attorney disciplinary proceedings). In light of the similarities between the present case and the violations in *Hodes*, along with the significant aggravating factors implicated by Respondent's conduct, we order disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MD. RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BRUCE AUGUST KENT.**

Circuit Court for Baltimore County
Case No.: 03-C-15-005338 AG
Argued: February 8, 2016

IN THE COURT OF APPEALS
OF MARYLAND

---

Misc. Docket AG No. 13

September Term, 2015

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

BRUCE AUGUST KENT

---

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

---

Dissenting Opinion by Adkins, J.

---

Filed: April 25, 2016

* Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of the majority opinion.

Respectfully, I dissent from the Majority. Although I expect that ultimately Mr. Kent should be disbarred for the conduct outlined in the Majority opinion, I am troubled by the orders of the hearing judge concerning discovery sanctions.

First, I think the hearing judge erred in granting the Motion to Shorten Time to Respond to Petitioner's Motion for Sanctions to less than two full days when, at that time, Respondent was only three days late in providing responses to discovery. Neither Respondent nor his counsel should be expected to be prepared to file an answer on two days' notice. Second, the court was unduly harsh in the nature and extent of the sanctions imposed—prohibiting Respondent from presenting virtually all possible defenses, including mitigation.

I do not condone in any way Respondent's underlying misconduct. My concern is for the precedent that we set in approving of such harsh sanctions for what began as a very minimal discovery violation. Although it is cumbersome to remand at this point, particularly when the misconduct here appears so severe, I believe we must do so for the sake of maintaining fairness in this and future cases.

I would remand to the hearing judge and direct that Respondent be given the opportunity to put on a defense to the charges of misconduct.